JOHN BEAMAN, ADMINISTRATOR OF LUCY BEAMAN, v. BESSIE R. DUNCAN AND CAROLINA CHINAWARE COMPANY,

and

T. L. HARDING, ADMINISTRATOR OF ALVA DENVER REYNOLDS, v. BESSIE R. DUNCAN, TRADING AS CAROLINA CHINA MARKET.

(Filed 17 March, 1948.)

**1. Automobiles § 7—**

Even though the violation of a traffic statute may be negligence *per se*, such negligence is not actionable unless there is a causal relation between the violation of the statute and the injury; and ordinarily whether such negligence is the proximate cause or one of the proximate causes of an injury is for the determination of the jury.

**2. Automobiles § 9—**

The evidence disclosed that the driver of the car in which intestates were riding slowed down to about ten miles per hour to make a right turn from the highway into a private driveway, and was hit by defendant's truck, which was following the car, as the car was making the turn. *Held:* The evidence fails to show any causal connection between alleged defective brakes on the car and the accident in suit.

**3. Automobiles § 8k—**

The evidence disclosed that the driver of the car in which intestates were riding was eighteen years of age and had no driver's license. The accident in suit occurred as the driver of the car, after slowing to ten miles an hour, was attempting to make a right turn off the highway into a private driveway. *Held:* The evidence fails to show any causal connection between the driver's failure to have a driver's license and the accident in suit.

**4. Automobiles § 18h (4)—Issue of intervening negligence held for jury upon conflicting evidence.**

Plaintiffs' evidence tended to show that the driver of the car in which intestates were riding gave the signal for a right turn, slowed to ten miles an hour, pulled the car to the left to make the turn but did not cross the center line of the highway, and that as he was making the turn, defendant's truck driver, following the car on the highway, first gave notice of its immediate proximity by sounding the horn, and struck the car as its front wheels left the hard surface and entered on the dirt driveway to its right. Defendant's evidence was to the effect that the truck driver blew his horn before overtaking the car, that the car turned to its left, and that the truck driver, anticipating that the car would stop on its left of the highway, turned to the right, and that the left side of the truck's bumper struck the right front wheel of the car when the car turned back across the highway in front of the truck. *Held:* The conflicting evidence raised an issue for the jury, and defendant's motion to nonsuit on the ground that the evidence disclosed negligence on the part of the driver of the car constituting the sole proximate cause of the accident, was properly overruled.

APPEAL in both cases by defendant from *Clement, J.*, at November Term, 1947, of YADKIN.

Civil actions to recover for the wrongful deaths of Lucy Beaman and Alva Denver Reynolds. The cases were consolidated for trial by consent.

It is admitted that Bessie R. Duncan, trading as Carolina China Market, owned the truck involved in the collision which caused the deaths of Lucy Beaman and Alva Denver Reynolds, and that it was being operated at the time of the collision by J. B. Wallace, an employee of the defendant, in furtherance of her business.

On 5 January, 1946, about 2:30 p.m., Lucy Beaman and Alva Denver Reynolds were riding in a 1930 A-Model Ford coupe, on Highway No. 601, leading from Yadkinville to Mocksville, which car was being driven by Henry Beaman, a brother of Lucy Beaman. They were en route from Yadkinville to the Beaman home, which is on the west side of the highway between Yadkinville and Mocksville.

Henry Beaman was only 18 years of age at the time of the collision and did not have a driver's license, but had been driving a car about six months. There is also evidence to the effect that the brakes on the Ford coupe were not very good and that Henry Beaman and his sister, Lucy Beaman, knew of the condition of the brakes.

It is further disclosed by the evidence that the defendant's Chevrolet truck, loaded with three and a half tons of chinaware, was overtaking the Ford coupe. Behind this truck was a Plymouth car driven by Ricer Badgett, which car was followed by another truck belonging to the defendant, which was also loaded with chinaware.

All the above vehicles were being driven down hill on a grade of five to seven per cent. The evidence is conflicting as to the speed of the defendant's truck which collided with the Ford coupe. The defendant's truck driver testified he must have been making 30 to 35 miles per hour. Mr. Badgett, who was following him, and was a witness for defendant, testified the truck driven by Wallace passed him 300 or 400 yards before it reached the point of collision and in his opinion was traveling about 35 miles per hour at the time of the impact. There was other evidence tending to show the truck was being operated from 40 to 50 miles per hour at the time of the collision.

The plaintiffs offered evidence to the effect that Henry Beaman was driving on his right side of the road, traveling about 30 to 35 miles per hour, until he came within 100 yards of the side road that leads to the Beaman home. He then gave a signal that he was going to turn and slowed down to about ten miles per hour. Henry Beaman testified: "I never did get across the center line of the highway. I started turning to the right into the road that leads to my home. The turn I made is a kind of sharp turn because the road is straight there. By a kind of sharp

turn, I mean that I went in at a kind of curve. . . . As I was making my turn, the right front wheel of my car got off the pavement onto the dirt driveway going into my home. That is the last thing I remember about what happened. . . . I never did get over the center line of the hard surface highway. As I was going along there, the left part of the highway was open for traffic at all times."

Corporal McKinney of the Highway Patrol testified: "A little North of the driveway into the Beaman home there was . . . a scooped out place in the hard surface. It was about 5 feet and 11 inches from the West side of the pavement. That was on the right, going South. The Beaman home is on the West side of the road. That road is a 20-foot highway in front of the Beaman house. . . . I did not find any marks North of the scooped out place. . . . From the scooped out place to where I found the truck was 175 feet. . . . The truck was lying on its left side. . . . The Ford coupe was . . . 90 feet from the scooped out place. . . . the Ford coupe was practically demolished, and it showed signs of impact on the right side of the car." According to the evidence, both the right front and rear wheels of the Ford coupe were crushed.

The driver of defendant's truck testified: "I was going on down the hill behind the Ford and just before the accident I blowed on him and he pulled to the left. Well, I saw a mail box and old roadbed where I thought they stopped to get the mail and I thought he started there and I pulled back to the right and when I pulled back to the right just at the road for him to turn in, which I did not see until he was turning, I was so near then, even with his front, that our left front bumper hit his right front wheel and that is what made the little hole in the pavement. . . . When the Ford pulled over to the left hand side of the highway, it got beyond the center mark. After the Ford got completely over on the left hand side of the highway, it traveled near around 50 feet. . . . I did not see him give any signal that indicated he was going to turn. . . . When I first blew my horn, I was fifty or seventy-five feet to the rear of the Ford coupe. . . . When I blew my horn and he pulled over to the left, I pulled to the right. When the Ford coupe got up to make his turn I was even with him. I had started around on the right hand side of the Ford. After I had hit the Ford I did not put on my brakes for 50 feet, but I stepped on the gas. I had not put my foot on the brakes because he cut too quick. By the time I had put my foot on the pedal, we had hit. I stepped on the gas after I hit. The black marks in the road were made by my truck leaning sideways. I stepped on the gas after I hit the Ford in order to straighten up if I could. The truck got away from me from the time I hit."

From judgments on verdicts in favor of both plaintiffs, the defendant appeals, assigning error.

*Allen & Henderson and F. D. B. Harding for plaintiffs.*

*Hall & Zachary and Womble, Carlyle, Martin & Sandridge for defendant.*

DENNY, J.   The defendant assigns as error the refusal of his Honor to allow her motion for judgment as of nonsuit on the ground that the evidence shows conclusively that the negligence of Henry Beaman was the sole proximate cause of the collision.

The defendant seriously contends that her motion for judgment of nonsuit dismissing the two actions should have been sustained under the authority of *Spease v. Butner,* 217 N. C., 82, 6 S. E. (2d), 808.   In that case Spease and Butner were traveling at night in opposite directions. The collision occurred when Spease turned his truck left and cut in front of the approaching car driven by Butner.   A guest passenger, Mrs. Myrtie Spease, who was riding in the Spease car and was injured, brought an action against L. T. Butner.   Mrs. Bertha Butner, a guest passenger in the Butner car, was injured and brought an action against E. A. Spease.   The cases were consolidated for trial.   The intervening negligence of E. A. Spease in the case against Butner, was established by his evidence.   He testified that he saw the Butner car approaching from the opposite direction, but that he misjudged its speed and turned to the left into the pathway of the approaching car.   His negligence was very properly held to be the sole proximate cause of the collision.

The defendant contends in the instant case, that the condition of the brakes on the Beaman car, the failure of Henry Beaman to give a proper signal before turning into the side road, his conduct in pulling a slow moving car to the left side of the road before turning to his right, together with the fact that he did not have a driver's license, established negligence *per se* on his part and that such negligence was the sole proximate cause of the collision; and that the negligent acts of defendant's driver, if any, were insulated thereby, and would not have resulted in any injury to the intestates of the plaintiffs except for the intervening negligence of Henry Beaman, citing *Murray v. R. R.,* 218 N. C., 392, 11 S. E. (2d), 326; *Van Dyke v. Atlantic Greyhound Corp.,* 218 N. C., 283, 10 S. E. (2d), 727; *Jeffries v. Powell,* 221 N. C., 415, 20 S. E. (2d), 561; *Dillon v. Winston-Salem,* 221 N. C., 512, 20 S. E. (2d), 845; *Beaver v. China Grove,* 222 N. C., 234, 22 S. E. (2d), 434; *Brady v. R. R.,* 222 N. C., 367, 23 S. E. (2d), 334; *Rattley v. Powell,* 223 N. C., 134, 25 S. E. (2d), 448.

Even though the violation of a traffic statute may be negligence *per se,* such negligence is not actionable unless there is a causal relation between the violation of the statute and the injury; and ordinarily whether such negligence is the proximate cause or one of the proximate causes which

resulted in an injury, is for the determination of the jury. *Grimes v. Carolina Coach Co.,* 203 N. C., 605, 166 S. E., 599; *Stovall v. Ragland,* 211 N. C., 536, 190 S. E., 899; *White v. R. R.,* 216 N. C., 79, 3 S. E. (2d), 310; *Smith v. Whitley,* 223 N. C., 534, 27 S. E. (2d), 442; *Morgan v. Coach Co.,* 225 N. C., 668, 36 S. E. (2d), 263. The evidence offered in behalf of the plaintiffs, does not establish such intervening negligence on the part of Henry Beaman as may be held, as a matter of law, to be the sole proximate cause of the collision. The case of *Spease v. Butner, supra,* and similar cases, are not controlling on this record. The evidence fails to show any causal relation between the condition of the brakes on the Ford coupe or the failure of Henry Beaman to have a driver's license and the injury inflicted.

The relative duties automobile drivers owe one another when they are traveling along a highway in the same direction, are governed ordinarily by the circumstances in each particular case. In *Dreher v. Divine,* 192 N. C., 325, 135 S. E., 29, *Stacy, C. J.,* in speaking for the Court said: "The driver of a forward vehicle cannot be required to yield the road unless and until the conditions are such as to render a passage reasonably safe. And if the forward driver be not allowed sufficient time to turn to the right before the rear vehicle runs upon him, or is forced off the road in order to avoid striking him, he cannot be held liable for negligence, contributory negligence or otherwise. One who operates an automobile should have it under control and if the driver of a front car has no knowledge of an approaching vehicle from the rear, and apparently does not hear its approach, the driver of the rear trailing vehicle should reduce his speed and stop, if necessary, to avoid a collision or an injury. He cannot proceed regardless of the fact that the driver of the front vehicle does not turn to the right of the road, unless there be ample room to pass in safety without it."

In the instant case the driver of the truck testified that he blew his horn as an indication he intended to pass the Ford coupe when he was about 50 to 75 feet behind the Ford. The driver of the Ford car testified that when he got in front of his father's house he pulled a little towards the center of the road, in order to make a right hand turn. "At this time I started turning right to go into a driveway on the right side of the road. I had given a signal for a right hand turn just prior to making my turn. As I started turning right I heard the horn of the truck, . . . which had been following me, but which I had not seen since I left the top of the hill about one-tenth of a mile away. This truck hit my car just after the front wheels had gone off the pavement into the driveway."

The conflicting evidence on the issue of negligence was for the jury; it has passed upon it and has answered the issue favorable to both plain-

tiffs. The ruling on the motion for judgment as of nonsuit will be upheld.

The defendant has assigned as error certain exceptions to the admission of evidence and has preserved her exceptions to certain portions of his Honor's charge. However, after a careful examination and consideration of these exceptions, we do not think any prejudicial error is shown.

In the trial below, we find

No error.