PAUL EVERETTE CLARK v. H. W. SCHELD AND THE CITY OF LENOIR (ORIGINAL DEFENDANTS), AND JOHN THOMAS SUDDRETH, SR., JOHN THOMAS SUDDRETH, JR., AND JAKE ROBERTS (ADDITIONAL NEW DEFENDANTS).

(Filed 20 January, 1961.)

1. Municipal Corporations § 5—

　　A municipal corporation exercises two classes of powers: One governmental, which are performed for the public good in behalf of the State, and are discretionary, political, or public in nature; and the other commercial or proprietary, which are performed for the private advantage of the compact community. It is not liable in tort in the performance of a governmental function.

2. Same—

　　In the operation of a chemical fogging machine on a street or highway for the purpose of destroying insects, a municipality acts in a governmental capacity in the interest of the public health, and it may not be held liable in tort for injuries resulting therefrom unless it waives its immunity by procuring liability insurance, G.S. 160-191.1, et seq., even though the operation of the machine renders a street or highway hazardous to traffic, since the exception to governmental immunity in failing to keep its streets in a reasonably safe condition relates solely to the maintenance and repair of its streets.

3. Automobiles § 41f—

　　Ordinarily, the mere fact of a collision with a vehicle ahead is some

evidence of negligence as to speed, or in following too closely, or in failing to keep a proper lookout, but each case must be governed by its own facts and circumstances.

**4. Same— Evidence held insufficient to be submitted to jury on question of negligence in hitting preceding vehicle.**

The evidence tended to show that a municipality was operating a chemical fogging machine on a jeep vehicle at nighttime, that in approaching the jeep its lights looked like the lights of any ordinary vehicle, that its flashing red light was not visible because of its own fog, and that the presence of the fog could not be ascertained until a motorist had passed the headlights of the jeep. The evidence further tended to show that plaintiff was following another car at moderate speed, that immediately upon entering the fog he applied his brakes and stopped, and was hit by defendant's car, with considerable force, inflicting serious injuries. The evidence also tended to show that defendant's car, traveling within the speed limit, had been following and overtaking plaintiff's car for about a mile, that plaintiff's car had slowed to about 35 miles per hour just before the collision, and that ten vehicles in the line of traffic had similar rear-end collisions. It was not alleged that defendant was following plaintiff's car more closely than was reasonable and prudent. *Held:* The evidence does not disclose that there was anything that could have given defendant notice of the peril in time for defendant to have avoided the accident, and nonsuit was proper.

**5. Negligence §§ 1, 24a—**

The law does not require omniscience and proof of negligence must rest on a more solid foundation than mere conjecture.

APPEAL by plaintiff from *Huskins, J.,* January-February 1960 Civil Term, of CALDWELL.

This is a civil action instituted 23 October 1958. Plaintiff seeks to recover damages for personal injury and property damage sustained by reason of the alleged actionable negligence of defendants, City of Lenoir and H. W. Scheld. The action involves a collision of automobiles.

The collision occurred about 10:30 P.M., 1 September 1958 (Labor Day), on Highway 321 within the corporate limits of the City of Lenoir. At the point of the accident the highway runs north and south and is downgrade for northbound traffic. It is a two-lane highway with a white line in the center. The posted speed limit is 55 miles per hour. In the vicinity of the accident there were only two houses, both unfinished, and a business establishment — otherwise, it was open territory. The weather was clear and the highway dry. Traffic was heavy.

An employee of the City of Lenoir was operating a jeep southwardly on the highway at a speed of about 10 miles per hour. Mounted

on the rear of the jeep was a machine used for spraying insecticide in vaporized form. On this occasion the machine was in operation and was emitting the vapor or fog from a nozzle located at a point about midway the length of the jeep. On the left front fender behind the headlights was a flashing red light.

· Plaintiff was driving his 1949 Ford automobile northwardly, meeting the jeep. He was following a car driven by a lady from West Virginia. Defendant Scheld was following plaintiff. Plaintiff came up behind the lady's car about 1000 feet south of the accident and followed. She was travelling at a moderate rate and reduced speed as she neared the jeep. She and plaintiff were then travelling about 30 to 35 miles per hour. At the time she met the jeep, or immediately before, plaintiff saw her brake lights go on and then all of her lights suddenly disappeared. Plaintiff applied brakes and stopped. The jeep continued on.

In approaching and meeting the jeep it appeared to be an ordinary automobile. The flashing red light was not visible; only the headlights could be seen. As plaintiff passed the headlights of the jeep he was suddenly enveloped by a fog. It was so thick plaintiff could see nothing. The fog could not be seen until plaintiff passed the jeep's headlights and was engulfed by it. The fog covered the entire width of the road. Plaintiff had no time to give notice or warning that he was going to stop. The fog destroyed visibility for 5 to 10 minutes.

Plaintiff did not know whether he struck the lady's car in front of him or not. She had stopped. He testified: "She thought I had hit her. . . . I don't know whether I hit her or not. When I came to rest I was sitting against her bumper . . . ."

Defendant Scheld's car hit the rear of plaintiff's vehicle. Plaintiff first saw the Scheld car behind him about a mile or more before he reached the place of collision. Scheld was then "several hundred yards" behind plaintiff. Scheld was gaining on plaintiff. When plaintiff came into the fog and stopped Scheld was "right behind" him. Just when plaintiff stopped Scheld hit him in the rear. The seats were torn out of plaintiff's car, the hood was jerked loose, "the back seat was bent down and the middle of it up." The whole back was crushed in. The chassis was bent. Plaintiff received personal injuries.

Scheld's car was struck in the rear by an automobile driven by John Suddreth, Jr. Suddreth testified: "The Clark, Scheld's car, and mine, were all jammed up there together. The Scheld car was in the middle. . . . I didn't know at the moment whether I hit the Scheld car before he hit the Clark car or at the same time, or afterwards. I didn't know just what happened until I got out and was talking to Mr. Scheld.

He said he hit the guy in front and he hadn't gotten straightened out until I hit him, until I hit his back end."

The Suddreth car in turn was struck in the rear by an automobile driven by a deputy sheriff. The deputy's car could be operated, so he turned around, pursued and stopped the jeep. It was then he discovered it had a flashing red light. He had not seen it before. None of the other parties involved had seen it at all.

"Ten vehicles had been wrecked. They all had been headed northward. All of them had been in their own lane of traffic. It was a rear end collision in each instance."

At the close of plaintiff's evidence both defendants moved for judgment of involuntary nonsuit. The motion was allowed.

From judgments of nonsuit and dismissal of the action as against the City of Lenoir and Scheld, plaintiff appealed and assigned error.

*W. H. Strickland for plaintiff.*
*Patton & Ervin and L. H. Wall for defendant, City of Lenoir.*
*Patrick, Harper & Dixon for defendant Scheld.*

MOORE, J. The question for decision is whether or not the trial court erred in allowing the motions for nonsuit.

The City of Lenoir is a municipal corporation.

"A municipal corporation is dual in character and exercises two classes of powers — governmental and proprietary. It has a twofold existence — one as a governmental agency, the other as a private corporation.

"Any activity of the municipality which is discretionary, political, legislative or public in nature and performed for the public good in behalf of the State, rather than for itself, comes within the class of governmental functions. When, however, the activity is commercial or chiefly for the private advantage of the compact community, it is private or proprietary.

"When injury or damage results from the negligent discharge of a ministerial or proprietary function it is subject to suit in tort as a private corporation. 6 McQuillin, Mun. Corps. (2d), sec. 2792.

"While acting 'in behalf of the State' in promoting or protecting the health, safety, security or general welfare of its citizens, it is an agency of the sovereign. No action in tort may be maintained for resulting injury to person or property. (Citing many authorities)." *Millar v. Wilson*, 222 N.C. 340, 341, 23 S.E. 2d 42. See also *Carter v. Greensboro*, 249 N.C. 328, 333, 106 S.E. 2d 564.

"In the absence of a constitutional or statutory imposition of tort

liability upon governmental units, recovery for personal injury or property damage resulting from insecticide or vermin eradication operations conducted by governmental units has generally been denied." 25 A.L.R. 2d, Anno: Destruction of Pest — Incidental Damage, s. 2, p. 1058. We have found no authorities contrary to the foregoing general rule.

Dr. Dula, a physician and formerly Councilman for the City of Lenoir, testified: "The purpose for the process was to destroy flies, mosquitoes and other insects which might be responsible for the transfer of infection from one individual to another. . . . The purpose of the program was for the health of the citizens of the community."

*Moore v. Plymouth*, 249 N.C. 423, 106 S.E. 2d 695, involves a factual situation somewhat similar to that of the instant case. A collision of motor vehicles resulted from the operation of a machine emitting chemical fog. The machine was mounted on a pickup truck being driven on a highway. The Town of Plymouth had procured liability insurance and had waived governmental immunity to the extent of the amount of the insurance. G.S. 160-191.1 *et seq.* In the opinion delivered by *Parker, J.*, it is said:

"The evidence is clear that the Ford pickup-truck and the fogging machine were being operated at the time by the Town of Plymouth to destroy mosquitoes. It is a well known fact that the breeding and presence of anopheles mosquitoes constitute a menace to the health and comfort of persons exposed to them. See *Godfrey v. Power Co.*, 190 N.C. 24, 128 S.E. 485; *Pruitt v. Bethell*, 174 N.C. 454, 93 S.E. 945. The Legislature has given powers to municipalities to promote and to secure the lives and health of their residents by empowering them in G.S. 160-200(6) '. . . to define, prohibit, abate, or suppress all things detrimental to the health, morals, comfort, safety, convenience, and welfare of the people, and all nuisances and causes thereof.'

"Unquestionably the Town of Plymouth had a legal right to destroy mosquitoes detrimental to the health and comfort of its residents, but if in doing so in the instant case it injured plaintiff by actionable negligence in the operation of its truck and fogging machine, it cannot completely avoid liability to him by reason of the provisions of G.S., Ch. 160, Art. 15A." (p. 431.)

Inferentially, then, this Court has held that governmental immunity applies under circumstances such as presented in the instant case unless waived by the municipality under the provisions of Art. 15A, Ch. 160, General Statutes of North Carolina (G.S. 160-191.1 *et seq*).

CLARK *v.* SCHELD.

We think, in the enactment of the legislation above referred to permitting the procurement of insurance and waiver of governmental immunity, the General Assembly recognized the immunity of municipalities from tort liability in the operation of motor vehicles in performance of governmental functions, and intended by the enactment to provide a limited exception to the general doctrine. This limited exception does not apply in this case. There is no proof that the City of Lenoir had waived immunity.

But plaintiff contends that the City is liable in this instance for the reason that the negligent conduct of its employee created a condition that obstructed and rendered dangerous a public highway within the City and that this condition proximately caused damage to plaintiff. The construction and maintenance of streets by a municipality is a governmental function. But, as an exception to the doctrine of governmental immunity, it has been uniformly held in this jurisdiction that municipalities may be held liable in tort for failure to maintain their streets in a reasonably safe condition and they are now required by statute (G.S. 160-54) to do so. *Glenn v. Raleigh*, 246 N.C. 469, 98 S.E. 2d 913.

But G.S. 160-54 relates to the maintenance and repair of the streets themselves. Parenthetically, it would appear that the duty to maintain and repair the highway in question rested upon the State Highway Commission. G.S. 136-41.1; G.S. 160-54.

The fact that chemical fog temporarily covered the highway as the jeep passed and rendered the passage of meeting vehicles perilous is only an incidental result of the performance of the governmental activity of insect extermination and does not impose liability in this case. *Stephenson v. Raleigh*, 232 N.C. 42, 59 S.E. 2d 195.

The court properly sustained the City of Lenoir's motion for nonsuit.

Plaintiff alleges that defendant Scheld was negligent in that he operated his automobile at a greater speed than was reasonable and prudent under the circumstances, failed to maintain a proper lookout, neglected to keep his vehicle under reasonable control, and drove recklessly.

Ordinarily the mere fact of a collision with a vehicle ahead furnishes some evidence that the following motorist was negligent as to speed, was following too closely, or failed to keep a proper lookout. *Clontz v. Krimminger*, 253 N.C. 252, 116 S.E. 2d 804; *Smith v. Rawlins*, 253 N.C. 67, 116 S.E. 2d 184. However, "The relative duties automobile drivers owe one another when they are travelling along a highway in the same direction, are governed ordinarily by the cir-

cumstances in each particular case." *Beaman v. Duncan*, 228 N.C. 600, 604, 46 S.E. 2d 707.

"The driver of a car is not required to anticipate that vehicles will be stopped or parked on the highway at night without lights or the warning signals required by statute, but this does not relieve him of the duty to keep a proper lookout and not exceed a speed at which he can stop within the radius of his lights, taking into consideration the darkness and atmospheric conditions, and the duty to anticipate the presence of others and hazards of the road, such as disabled vehicles." Strong: N. C. Index, Vol. 1, Automobiles, s. 10, pp. 241-2; *Weavil v. Trading Post*, 245 N.C. 106, 95 S.E. 2d 533; *Singletary v. Nixon*, 239 N.C. 634, 80 S.E. 2d 676; *Morris v. Transport Co.*, 235 N.C. 568, 70 S.E. 2d 845; *Wilson v. Motor Lines*, 230 N.C. 551, 54 S.E. 2d 53.

There is no allegation that defendant Scheld followed plaintiff's car more closely than was reasonable and prudent. And the evidence does not support the allegation of reckless driving.

There is no evidence from which it may be inferred that Scheld was exceeding the maximum speed limit of 55 miles per hour. The inquiry as to speed is whether it was greater than was reasonable and prudent under the circumstances. Scheld was in a line of traffic. He did not overtake and pass or attempt to pass any other vehicle in the line. For a mile or more he had been narrowing the distance between his and plaintiff's automobiles. The weather was clear and the road was dry. Plaintiff had been travelling at a moderate rate and his speed just prior to the collision was 30 to 35 miles per hour. There was nothing visible, to Scheld which indicated any unusual danger. He could see the headlights of the jeep approaching from the opposite direction, but it appeared to be an ordinary motor vehicle. According to plaintiff's testimony the red flashing light was not visible and the chemical fog could not be seen until the headlights of the jeep had been passed. Plaintiff testified that he had no time to give notice or warning that he was going to stop. Plaintiff applied brakes, but there is no evidence as to whether they took effect before or after he entered the fog. There is no evidence as to whether he had brake lights, or, if he did, whether they were in working order. The distance between Scheld's and plaintiff's vehicles just before the accident does not appear; plaintiff stated that when he stopped Scheld was "right behind" him. This expression is so indefinite as to be speculative, and recovery is not sought on the theory that Scheld was following too closely. It does not appear how quickly plaintiff stopped after entering the fog or whether there was sufficient

reaction time or space within which to stop after Scheld discovered the foggy condition. Ten vehicles in this line of traffic, including Scheld's car, suffered similar rear end collisions. It is true there was extensive damage to plaintiff's car, but Scheld's car was struck in the rear by Suddreth. Taken as a whole the evidence does not indicate that Scheld might, in the exercise of ordinary care, have avoided the collision with plaintiff's automobile. If Scheld saw all that could have been seen, the evidence does not disclose anything which would have warned him of peril until he reached the area of fog behind the jeep's headlights. The law does not require omniscience and proof of negligence must rest on a more solid foundation than mere conjecture. *Cheek v. Brokerage Co.*, 209 N.C. 569, 183 S.E. 729.

In *Moore v. Plymouth, supra,* involving chemical fog on a highway, the defendant Daniel saw the cloud of fog at a distance of 250 yards and as he drew nearer he saw the red flashing light. He had ample warning of danger. But in the instant case there is positive testimony from plaintiff that neither the fog nor the red light was visible until the headlights of the jeep had passed.

This case is easily distinguishable from those in which motorists travelled for some distance through smoke or fog before collision and were aware of, or under duty to anticipate, danger. *Clontz v. Krimminger, supra; Royal v. McClure*, 244 N.C. 186, 92 S.E. 2d 762; *Dawson v. Transportation Co.*, 230 N.C. 36, 51 S.E. 2d 921; *Bus Co. v. Products Co.*, 229 N.C. 352, 49 S.E. 2d 623; *Riggs v. Oil Corp.*, 228 N.C. 774, 47 S.E. 2d 254; *Sibbitt v. Transit Co.*, 220 N.C. 702, 18 S.E. 2d 203.

A consideration of the evidence within the framework of the complaint leads us to the conclusion that plaintiff failed to make out a *prima facie* case of actionable negligence as against defendant Scheld.

The judgments appealed from are

Affirmed.