ANN D. JONES v.
C. B. ATKINS COMPANY AND ROY FRANKLIN COLEMAN.
AND
JAMES O. JONES v.
C. B. ATKINS COMPANY AND ROY FRANKLIN COLEMAN.

(Filed 14 June 1963.)

**1. Automobiles § 41a—**

No presumption of negligence arises from the mere fact that there has been an accident and an injury, but in order to be entitled to go to the jury plaintiff must show that defendant was negligent in some respect and that such negligence was the proximate cause of injury.

**2. Automobiles § 41f— Evidence held insufficient to show negligence on part of defendant driver in striking passing vehicle which skidded into spin.**

Plaintiff's evidence tended to show that she passed defendant's tractor-trailer, completing the process within two-tenths of a mile without exceeding a speed of 50 to 55 miles an hour, that after passing and driving back to her right-hand side of the highway her car suddenly began to skid and went into a spin, that she regained control and proceeded westwardly at a reduced speed, and that about 350 feet beyond the point her car started to skid the tractor-trailer collided with the rear of her car. Plaintiff introduced a statement of defendant driver that after he saw the car skidding he did all he could to stop and drove off the road to his right in an attempt to keep from striking the car. *Held:* Plaintiff's evidence negatives excessive speed on the part of the tractor-trailer or that its driver determined the interval between the vehicles so that he could be guilty of following too closely, and there being no evidence of any defect in the brakes of the tractor-trailer, nonsuit should have been entered.

**3. Same; Automobiles § 19—**

The evidence tended to show that the driver of a tractor-trailer was confronted with an emergency when an automobile which had just passed him skidded into a spin on a wet highway and presented him with the alternatives of striking the car, applying his brakes with sufficient firmness to stop the vehicle if possible and risk skidding and jack-knifing, or slackening speed and driving off the road into a bank on the right in an effort to avoid collision. *Held:* The driver's decision in the sudden emergency to drive off the road to the right and into the bank cannot be held negligent.

**4. Automobiles § 41f—**

The rule that a collision with the preceding vehicle furnishes some evidence that the following motorist was negligent as to speed, or was following too closely or failed to keep a proper lookout, is not an absolute rule but the relative duty of motorists in such instances must be governed by the circumstances of each particular case, and when the evidence shows no negligence on the part of the following vehicle, the mere fact of collision with the preceding vehicle cannot supply evidence of negligence on this aspect.

APPEAL by defendants from *Johnston, J.,* December 3, 1962 session of FORSYTH.

Two actions to recover for personal injury and property damage, resulting from a collision of motor vehicles allegedly caused by the actionable negligence of defendants. The actions were consolidated for trial.

The jury answered the negligence and contributory negligence issues in favor of plaintiffs and awarded *feme* plaintiff $5000 for personal injury and male plaintiff $1000 for property damage. Judgments were entered in accordance with the verdicts.

*W. Scott Buck and Carroll H. Matthews for plaintiffs.*
*Deal, Hutchins and Minor for defendants.*

MOORE, J.  The collision occurred about 4:45 P.M., 29 January 1960, on U. S. Highway 64 about 9 miles west of Mocksville, North Carolina. At the general location of the accident the highway is straight but hilly. It is paved with asphalt a width of 20 feet. It was raining and the highway was wet.

Plaintiffs' evidence tends to show the following state of facts: *Feme* plaintiff was driving an Oldsmobile passenger car belonging to her husband, the male plaintiff. *Feme* plaintiff's sister was a passenger. They were travelling westwardly and following a tractor-trailer combination, driven by defendant Coleman, an employee of defendant Atkins Company. The automobile followed the tractor-trailer 3 or 4 miles. They were approaching a dip or valley between the crest of two hills; the highway was straight and the hills were three-tenths to four-tenths of a mile apart. As they came to the crest of the first hill, the speed of the vehicles was 40 to 45 miles per hour. *Feme* plaintiff gave a left turn signal and pulled to the left to pass. She increased speed to pass, and the tractor-trailer "speeded up"; her passing speed did not exceed 50 to 55 miles per hour. When she was far enough ahead of the tractor-trailer that she saw its headlamps in her rear-view mirror, she pulled back into the right-hand lane. Neither she nor any of her witnesses saw the tractor-trailer again until after the collision. She had travelled two-tenths of a mile in passing. After she got back into the right-hand lane and had travelled 75 to 80 feet to the bottom of the dip, the automobile suddenly began to skid on the wet pavement and went into a spin. It spun completely around once or twice. She got it straightened out and proceeded westwardly at a reduced speed. At about 350 feet beyond the point the automobile had started skidding, and at or near the crest of the second hill, the automobile

was struck in the rear by the front of the defendant's tractor. The automobile was turned around and it came to a stop headed eastwardly on the south side of the highway. The tractor-trailer continued northwardly and stopped beyond the position of the automobile. Before the collision the tractor-trailer had run off the hardsurface and into a shallow ditch on the right-hand (north) side of the highway and into a bank. Male plaintiff, who arrived on the scene after the collision and after the tractor-trailer had been pulled away, observed a scrape mark 125 feet in length along the bank. The distance from the west end of the scrape mark to the point where *feme* defendant told him the collision occurred was 225 feet. Broken glass and other debris was found a little to the west of and on the opposite side of the road from the position of the automobile after the collision. The automobile was greatly damaged and *feme* plaintiff was injured. At the scene defendant Coleman told male plaintiff "that he did all he could to stop . . . he left the road to keep from hitting her. . . ."

Defendants' evidence tends to show in part: The tractor-trailer and its load had a gross weight of 47,000 pounds. It was loaded with paint and furniture finishing material. When the automobile pulled out to pass they were going downhill. When it began to straighten up in the right-hand lane, it went into a spin. It was spining clockwise. Coleman applied brakes, and as the automobile spun around the third time he "left the road and went over into the ditch and bank on the right side of the road." He ran off the highway into the bank to keep from hitting the automobile. The trailer scraped the bank a distance of 30 feet, and the tractor-trailer came to rest against the bank. The left front wheel of the tractor was on the hardsurface. As the automobile spun around a fourth time its left rear struck the left front light, fender and bumper of the tractor. The automobile came to rest on the south side of the highway slightly to the east of the tractor-trailer and headed back toward Mocksville. The scrape mark 125 feet along the bank (except 30 feet thereof) was made when a wrecker and lumber truck pulled the tractor-trailer out after the highway patrolman came to the scene.

R. C. Blalock, a highway patrolman, reached the scene at 5:10 P.M. He found the tractor-trailer on the north side of the highway headed west. It was leaning against the bank and its right wheels were in the ditch. The bank had been scraped a distance of 30 or 40 feet. The tractor-trailer was about 150 to 175 feet east of the crest of the hill. After it was pulled out the scrape mark along the bank was 100 to 125 feet long. The Oldsmobile was on the south side of the highway headed east, and it was slightly to the rear of the tractor-trailer.

Plaintiffs allege that defendant Coleman was negligent in that: (1) he operated the tractor-trailer at a speed greater than was reasonable and prudent under the circumstances; (2) he violated the reckless driving statute, G.S. 20-140; (3) he failed to keep a reasonable lookout; (4) he failed to keep the tractor trailer under proper control; (5) he followed too closely in violation of G.S. 20-152(a); and (6) he operated the tractor-trailer without having brakes thereon adequate to control it, G.S. 20-124(a). Plaintiffs also allege that this negligence proximately caused the collision and the resulting injuries and damage.

Defendants argue that their motion for nonsuit aptly made should have been sustained.

No presumption of negligence arises from the mere fact that there has been an accident and an injury. *Johns v. Day*, 257 N.C. 751, 127 S.E. 2d 543. "In order to establish actionable negligence plaintiff must show that there has been a failure to exercise proper care in the performance of some legal duty which the defendant owed to the plaintiff under the circumstances in which they were placed, and that such negligent breach of duty was the proximate cause of the injury — a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable, under all the facts as they existed." *Heuay v. Construction Co.*, 254 N.C. 252, 253, 118 S.E. 2d 615.

Plaintiffs contend that the skidding and revolving of the Oldsmobile on the wet asphalt was pure accident, and not the result of worn tires or negligence on the part of the driver. For the purposes of the nonsuit motion we accept this theory. Even so, we find in the record no allegation of negligence supported by evidence indicating liability on the part of defendants. As Mrs. Jones turned to the left to pass, the speed of both vehicles was 40 to 45 miles per hour. She stated that she increased speed in passing and that the tractor-trailer "speeded up." These bits of testimony constitute the entire evidence as to the speed of the tractor-trailer. Mrs. Jones does not say that she sounded her horn before or in the process of passing, and plaintiffs do not allege and rely on a violation of G.S. 20-151 by defendant Coleman. Furthermore, plaintiffs' evidence negatives any material increase in speed by the tractor-trailer, for Mrs. Jones testified that she passed the tractor-trailer and was far enough in front to see its headlamps in her rear-view mirror before turning into the right-hand lane, did not exceed 50 to 55 miles per hour in passing, and completed the passing process within two-tenths of a mile. She began the passing movement

at the crest of the hill and it is reasonable to suppose that there was some natural acceleration in going downhill. Neither Mrs. Jones nor her sister saw the tractor-trailer again after Mrs. Jones started back into the right-hand lane, until after the collision. The conduct of defendant Coleman in the meanwhile is disclosed only by his statements and the physical evidence. Plaintiffs' evidence shows that Coleman stated to Mr. Jones at the scene that he did all he could to stop and left the road to keep from striking the Oldsmobile. There is no evidence that the tractor-trailer brakes did not meet legal requirements; there is no evidence at all concerning the condition of the brakes. With reference to lookout, there was nothing to put Coleman on notice of any peril until the Oldsmobile began to skid, and then, according to all the evidence he applied brakes and pulled off the road and into the bank to avoid a collision. Mrs. Jones' testimony cancels the suggestion that the tractor-trailer was following too closely; it was she who established the interval between the vehicles; she made the calculation as to the proper time and place to pull back into the right-hand lane in front of the tractor-trailer; she travelled only 75 to 80 feet thereafter before beginning to spin and rotate. There is a complete lack of evidence of reckless driving on the part of defendant Coleman within the purview of G.S. 20-140; if he was reckless it consisted in risking his own bodily wellbeing and his vehicle and cargo by turning off the highway into the bank to avoid striking the Oldsmobile and injuring its occupants.

Plaintiffs' main contention seems to be that Coleman failed to control the tractor-trailer after it ran off the hardsurface to avoid collision. Under the circumstances here presented we are of the opinion that this failure did not amount to negligence proximately causing injury. As the Oldsmobile began to skid and spin Coleman was faced with a sudden emergency brought on by what the plaintiffs characterize as a pure accident. It was raining, and the highway was wet and apparently slippery at the location of the skidding of plaintiffs' car. He was faced with immediate choices: to strike the Oldsmobile, to apply brakes with sufficient firmness to stop the vehicle if possible and risk skidding and jack-knifing, or to slacken speed and drive off the road and into a bank in an effort to avoid injuring the Oldsmobile and its occupants. In considering circumstances strikingly similar, we said, in part quoting 65 C.J.S., Negligence, s. 17, pp. 409-410, that where one acts in a sudden emergency not of his own making, if he exercises "such care as an ordinarily prudent man would exercise when confronted by a like emergency, he is not liable for an injury which resulted from his conduct, even though another course of

conduct would have been more judicious, or even though another course of conduct would have been safer, or might even have avoided the injury, as under such circumstances the injury is regarded as an inevitable accident." *Schloss v. Hallman,* 255 N.C. 686, 690, 122 S.E. 2d 513. Paraphrasing the conclusion in the *Schloss* case: There is no evidence on this record tending to show that the choice made by Coleman in his effort to avoid a collision with the Oldsmobile was not such a choice as a person of ordinary care and prudence would have made under similar circumstances. All that is required of the operator of a vehicle is reasonable care under the circumstances in which he is placed.

We have said that ordinarily the mere fact of a collision with a vehicle ahead furnishes some evidence that the following motorist was negligent as to speed, was following too closely, or failed to keep a proper lookout. *Clontz v. Krimminger,* 253 N.C. 252, 116 S.E. 2d 804. But this rule is not absolute. *Clark v. Scheld,* 253 N.C. 732, 117 S.E. 2d 838. "The relative duties automobile drivers owe one another when they are travelling along a highway in the same direction, are governed ordinarily by the circumstances in each particular case." *Beaman v. Duncan,* 228 N.C. 600, 604, 46 S.E. 2d 707. Where plaintiffs' evidence shows there was no negligence as to speed, lookout and close following, or that negligence in these respects could not have been a proximate cause of the collision and damage, the rule stated in the *Clontz* case does not apply.

Though we do not deem it necessary to consider defendants' allegations of contributory negligence on the part of plaintiffs, we do not think it amiss to observe that, if Mrs. Jones, as her testimony tends to show, travelled at a reduced speed 350 feet after her car "straightened up" and before the collision, and if she was keeping a reasonable lookout, it is difficult to understand why she was oblivious to the tractor-trailer out of control.

Reversed.