OLIVER B. RACINE v. FREDERICK D. BOEGE

No. 6912SC458

(Filed 22 October 1969)

**1. Trial § 21— nonsuit — consideration of evidence**

On motion to nonsuit, all the evidence which tends to support plaintiff's claim must be taken as true and must be considered in the light most favorable to him, resolving all contradictions and discrepancies in his favor and giving him the benefit of every reasonable inference which may legitimately be drawn therefrom.

**2. Automobiles § 16— law of the road — vehicles traveling in same direction**

The relative duties automobile drivers owe one another when they are traveling along a highway in the same direction are governed ordinarily by the circumstances in each particular case.

**3. Automobiles § 56— rear-end collision — evidence of negligence — nonsuit**

Although the mere fact of a collision with a vehicle ahead furnishes some evidence that the following motorist was negligent, this rule is by no means to be mechanically applied in every rear-end collision case; whether there is sufficient evidence of negligence to carry that issue to the jury must still be determined by all of the unique circumstances of each individual case, the evidence of a rear-end collision being but one of those circumstances.

**4. Negligence § 29— sufficiency of evidence of negligence — nonsuit**

If all of the evidence, even when considered in the light most favorable to the plaintiff, negatives any actionable negligence on the part of defendant, or if the evidence still leaves the question of defendant's negligence as a matter of mere speculation and conjecture, nonsuit is proper.

**5. Automobiles § 56— rear-end collision — fog — exceeding safe speed — nonsuit**

In an action to recover damages for personal injuries sustained by

plaintiff when the automobile in which he was riding as a passenger was struck in the rear by a pickup truck operated by defendant, the collision occurring in early morning in a fogbank so thick that visibility had been reduced almost to zero, plaintiff's evidence *is held* sufficient to support an inference that at the time of the collision defendant was driving at a speed greater than was reasonable and prudent under the conditions then existing, there being evidence that defendant was driving at a speed in excess of 25 miles per hour notwithstanding he had penetrated approximately 1,000 feet into the fogbank. G.S. 20-141(a), G.S. 20-141(c).

APPEAL by plaintiff from *Canaday, J.,* 12 May 1969 Civil Session of CUMBERLAND Superior Court.

This is a civil action to recover damages for personal injuries sustained when the Plymouth station wagon in which plaintiff was riding as a passenger was struck in the rear by a Chevrolet pickup truck owned and driven by defendant. The collision occurred in a heavy fog about 6 a.m. on the morning of 9 December 1967 while both vehicles were traveling northwardly on Interstate Highway 95 in the City of Fayetteville, N. C. At the scene I-95 has two lanes for northbound and two for southbound traffic, with the northbound and southbound traffic lanes being divided by a grass median. Immediately east of the easternmost, or outside, traffic lane for northbound traffic there is a grass shoulder. The highway is approximately straight, level, and is unobstructed. The posted speed limit was 65 miles per hour.

Plaintiff alleged his injuries were proximately caused by the negligence of defendant in driving at a speed greater than was reasonable and prudent under the existing circumstances, in failing to reduce his speed when faced with the special hazard created by the fogbank, in following too closely, and in failing to keep a proper lookout and failing to keep his vehicle under proper control.

Defendant answered, denying he was negligent, and alleging that at the time and place of the collision the highway had been completely covered by a thick fog which was so dense as to make it impossible to see more than a few feet ahead; that immediately after being suddenly confronted by the fogbank, he rapidly decreased speed and was then suddenly confronted with the rear of the station wagon, which was either stopped or moving very slowly in the outside northbound lane directly in the path of defendant's truck; that he immediately applied the full force of his brakes, but was unable to stop before colliding with the rear of the station wagon. Defendant further alleged that until he had entered into the fogbank there was no warning or indication that such existed or that he would be suddenly confronted with a fog almost completely

obscuring his vision, and pleaded that the collision was unavoidable and occasioned by an act of God.

At the trial plaintiff testified in substance: At about 6:15 in the morning of 9 December 1967 he was riding as a passenger in the station wagon which was being driven by his stepson, who had since died from causes unrelated to the accident. They were traveling north on the outside northbound lane of I-95. When they saw the fog, he told his stepson to "pull over and we will wait until it rises." They were going about 30 miles per hour when they first got into the curtain of fog. The station wagon slowed to 20 or 25 miles per hour and started turning off the traveled portion of the highway onto the grass shoulder. When they were partially off of the traveled portion of I-95 and half on the grass, the left rear of the station wagon was struck by the front of defendant's truck, injuring the plaintiff. It was daytime, and the station wagon did not have any lights on at the time. Plaintiff also testified: "We could see the pavement before we hit the fog. After we hit the fog we couldn't see nothing then. We were in the fog when he hit us." Plaintiff also testified that when they got into the fog they immediately began to slow down and were not very far into the fog when they were hit. Plaintiff did not at any time see defendant or his truck or hear any noise before the collision.

Two police officers, who had investigated the collision, also testified for the plaintiff. E. G. Brown, one of these police officers, testified in substance: He and Officer McAlister were in their patrol car at a filling station when a passing motorist informed them of the accident. They went to investigate the wreck at approximately 6:05 a.m. As they drove to the scene of the accident, visibility on I-95 was pretty good until they reached the Cape Fear River bridge. As they got onto the south side of the bridge, they hit a heavy fogbank and the curtain of fog continued some 2,000 feet north and beyond the bridge. As they got onto the bridge, visibility dropped 85 percent. The fog was like as if "you would pull a curtain down in front of you." As the patrol car entered the fogbank, it was traveling approximately 60 miles per hour and immediately slowed to about 10 miles per hour. The scene of the accident was approximately 1,000 feet north of the Cape Fear River bridge. They were "right on" the station wagon before they saw it. At the scene of the collision, the roadway was straight and level and the only obstruction at the time was the thick fogbank. The first vehicle they came to was the station wagon, which was completely off of the pavement on the right-hand shoulder of the road. Defendant's truck was also off the pavement directly north of the station wagon. Some 25 or 30

feet north of the station wagon, still sitting on the pavement, was a tractor trailer. The left rear of the station wagon was damaged. There was debris on the pavement just south of the station wagon. Officer Brown saw no tire marks or skid marks. The right front and the rear of defendant's truck were damaged. The officers determined there were three vehicles involved in the collision in the northbound lane, and defendant's pickup truck had been struck in the rear by the tractor trailer. The driver of the station wagon told Officer Brown "they had hit the fogbank and had slowed down almost to a stop." When the officers arrived at the scene, defendant was in process of putting out flares.

Officer McAlister testified there was minor debris, dirt and mud on the pavement in the right-hand lane going north, and that he would agree with Officer Brown's description of the fogbank; that to the south of the Cape Fear River, visibility was 80 to 85 percent and "as you went onto the bridge it dropped almost to zero."

At the close of plaintiff's evidence, the court directed an involuntary nonsuit and plaintiff appealed.

*Williford, Person & Canaday, by N. H. Person, for plaintiff appellant.*

*Anderson, Nimocks & Broadfoot, by Henry L. Anderson, for defendant appellee.*

PARKER, J.

[1]  The sole question presented is whether the trial court erred in entering judgment of nonsuit. In passing on this question it is elementary that all the evidence which tends to support plaintiff's claim must be taken as true and must be considered in the light most favorable to him, resolving all contradictions and discrepancies in his favor and giving him the benefit of every reasonable inference which may legitimately be drawn therefrom. *Clarke v. Holman,* 274 N.C. 425, 163 S.E. 2d 783.

Plaintiff alleged that defendant was negligent in several respects, including that he drove his vehicle at a speed greater than was reasonable and prudent under the existing circumstances, in violation of G.S. 20-141(a), and that he failed to reduce speed when a special hazard existed, in violation of G.S. 20-141(c). Plaintiff presented no direct evidence as to the manner in which defendant was operating his vehicle at the time of the collision; he was himself the only eyewitness who testified to the actual collision, and he neither saw

nor heard defendant's truck before the collision occurred. Therefore, the question before us resolves itself into whether, under all of the circumstances of this case, the fact that defendant's truck collided with the vehicle ahead of it provided by itself sufficient evidence of negligence on the part of the defendant to require submission of that issue to the jury.

**[2-4]**   "The relative duties automobile drivers owe one another when they are traveling along a highway in the same direction, are governed ordinarily by the circumstances in each particular case." *Beaman v. Duncan,* 228 N.C. 600, 604, 46 S.E. 2d 707, 710. "Ordinarily the mere fact of a collision with a vehicle ahead furnishes some evidence that the following motorist was negligent as to speed, was following too closely, or failed to keep a proper lookout." *Clark v. Scheld,* 253 N.C. 732, 737, 117 S.E. 2d 838, 842. This is, however, by no means an absolute rule to be mechanically applied in every rear-end collision case. Whether in a particular case there be sufficient evidence of negligence to carry that issue to the jury must still be determined by all of the unique circumstances of each individual case, the evidence of a rear-end collision being but one of those circumstances. *Powell v. Cross,* 263 N.C. 764, 140 S.E. 2d 393; *Dunlap v. Lee,* 257 N.C. 447, 126 S.E. 2d 62; *Clark v. Scheld, supra.* If all of the evidence, even when considered in the light most favorable to the plaintiff, negatives any actionable negligence on the part of the defendant (as in *Jones v. Atkins Co.,* 259 N.C. 655, 131 S.E. 2d 371), or if the evidence when so considered still leaves the question of any negligence on the part of the defendant as a matter of mere speculation and conjecture (as in *Clark v. Scheld, supra*), nonsuit is proper.

G.S. 20-141(a) provides that "(n)o person shall drive a vehicle on a highway . . . at a speed greater than is reasonable and prudent under the conditions then existing." G.S. 20-141(c) provides that when special hazards exist by reason of weather or highway conditions, "speed shall be decreased as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway, and to avoid causing injury to any person or property either on or off the highway, in compliance with legal requirements and the duty of all persons to use due care."

**[5]**   In the present case, accepting plaintiff's evidence as true, considering it in the light most favorable to him, resolving any contradictions and discrepancies therein in his favor, and giving him the benefit of every legitimate inference to be drawn therefrom, as we are required to do in passing on the correctness of the trial court's

judgment of involuntary nonsuit, plaintiff's evidence permits a legitimate inference by a jury that the collision and plaintiff's injuries were proximately caused by defendant's negligence in driving his truck at a speed greater than was reasonable and prudent considering the conditions then and there existing. There was evidence of a fog so dense that visibility was almost zero. While plaintiff himself testified they were "not very much" into the fog when the collision occurred, the investigating police officer testified that the fog commenced on the south side of the Cape Fear River bridge and the collision occurred approximately 1,000 feet north of the bridge. While there is some discrepancy in the evidence as to the time the officers went to the scene to investigate as it related to the time the collision occurred, one officer testifying they went at 6:05 a.m. and plaintiff himself testifying the collision occurred at 6:15 a.m., it is a legitimate inference that the officers arrived on the scene very shortly after the collision occurred and that in the meantime there had been no material change in the location or physical characteristics of the fogbank. It was, therefore, a legitimate inference that the vehicles had actually progressed at least 1,000 feet into the fog before the collision occurred. Plaintiff testified that the car in which he was riding was moving "20 or 25 miles per hour" when it was struck in the rear by defendant's truck. Since necessarily defendant's truck must have been traveling faster than the car in which plaintiff was riding, it would be a legitimate inference for the jury to conclude that defendant was still driving at a speed in excess of 25 miles per hour even after he had penetrated approximately 1,000 feet into a fogbank so thick that visibility therein had been reduced practically to zero. Obviously this presents a different situation than was present in the case of *Clark v. Scheld, supra,* in which the motorists were confronted without any prior warning by an artificially created chemical fog and it did not appear there was sufficient reaction time or space within which to stop after defendant discovered the foggy condition.

While it is entirely possible that the defendant in the present case was exercising every care which a reasonable and prudent driver would have exercised under the circumstances confronting him, and while certainly the evidence does not compel any finding of negligence on his part, we hold that under all of the circumstances there was sufficient evidence to require that the jury determine the issue, and the judgment of nonsuit is

Reversed.

CAMPBELL and GRAHAM, JJ., concur.