THOMAS S. MORGAN, TOWN OF WINFALL AND ALBEMARLE ELECTRIC
MEMBERSHIP CORPORATION v. TOWN OF HERTFORD

No. 831SC1227

(Filed 16 October 1984)

1. **Electricity § 2.1; Municipal Corporations § 4.4.— furnishing of electrical service by one municipality in area annexed by another**

    The rights of a municipality competing to provide electric service within the corporate limits of another municipality are determined by G.S. 160A-331 through 338, under which a municipal corporation may be a "person" and a "secondary supplier."

2. **Electricity § 2.1; Municipal Corporations § 4.4— competing electric service corporations**

    Where defendant was the sole provider of electric service in the annexed area, where both plaintiff and defendant had the willingness to serve and appeared to have the financial and physical ability to serve, but plaintiff was not ready to serve, defendant's continued service fell within the reasonable limitations permitted by G.S. 160A-312, and defendant was properly declared a secondary supplier.

APPEAL by plaintiffs from *Strickland, Judge*. Order and judgment entered 12 August 1983 in Superior Court, PERQUIMANS County. Heard in the Court of Appeals 20 September 1984.

*Crisp, Davis, Schwentker & Page, by William T. Crisp and Robert F. Page, for plaintiff appellants.*

*Lake and Lake, by I. Beverly Lake, Jr., for defendant appellee.*

BECTON, Judge.

This case involves the rights of a municipality to continue providing electric service within an area recently annexed by a neighboring municipality and potentially serviced by a franchised electric membership corporation.

Until September 1962, the defendant, Town of Hertford, a municipal corporation created and existing under the laws of North Carolina, provided electric service to the town of Winfall, also a municipal corporation created and existing under the laws of North Carolina, and to the surrounding area, including all customers in the annexed area in dispute. The area in dispute has never been assigned to a supplier of electric service pursuant to N.C. Gen. Stat. Sec. 62-110.2 (1982). In September 1962, Winfall granted a franchise to plaintiff, Albemarle Electric Membership Corporation (Albemarle), to provide electric service within the corporate limits. Under its terms, the franchise extended to and was automatically effective in any territory subsequently annexed by Winfall. Hertford sold Albemarle its power lines and facilities within the corporate limits of Winfall, but continued to provide service to the surrounding area, including all the residents of the area in dispute. The area in dispute was subsequently annexed to Winfall on 9 March 1981. On 15 January 1982, plaintiff, Thomas S. Morgan, a resident of the annexed area, asked Hertford to disconnect its lines to his house so that Albemarle could run its lines in. Hertford refused his request.

On 11 May 1982 Winfall, Albemarle and Morgan instituted this declaratory judgment action seeking to establish Albemarle's right, as the sole electric franchisee, to provide electric service to Morgan and any other present and future customer within the annexed area, who desired service from Albemarle. Hertford, in its Answer and Counterclaim, asked the trial court to declare that Hertford had the exclusive right to serve all present and future customers within the annexed area. The parties filed cross-motions for summary judgment. The trial court denied the motions, because neither party was entitled to judgment as a matter of law. The trial court then declared Albemarle a "primary supplier" and Hertford a "secondary supplier" within the meaning of N.C. Gen. Stat. Secs. 160A-331 and -332 (1982). Therefore, Hertford has all the rights of a "secondary supplier" provided under G.S. Sec. 160A-332 (1982), including the exclusive right to serve all premises within the annexed area being served by it, or to which any of its facilities were attached, on the date of annexation, 9 March 1981. Albemarle has the rights of a "primary supplier" provided under G.S. Sec. 160A-332 (1982).

Plaintiffs appeal.

I

Plaintiffs argue that the trial court erred in declaring Hertford a "secondary supplier," as defined in N.C. Gen. Stat. Sec. 160A-331(5) (1982), and therefore, in denying plaintiffs' motion for summary judgment. We affirm.

II

Hertford's right to provide electric service within the corporate limits of Winfall requires a two-step analysis: (1) Is Hertford a "secondary supplier" under G.S. Sec. 160A-331(5) (1982) and, if so, (2) Does Hertford's proposed operation within the corporate limits of Winfall qualify as "within reasonable limitations," pursuant to N.C. Gen. Stat. Sec. 160A-312 (1982)?

[1] The Territorial Assignment Act of 1965, as codified at N.C. Gen. Stat. Sec. 62-110.2 (1982) and G.S. Secs. 160A-331 to -338 (1982), represents an attempt to eliminate the "uneconomic duplication of transmission and distribution systems" bred of unbridled competition between public utilities, electric membership corporations and municipalities by designating the various competitors' rights. *Domestic Electric Svce, Inc. v. City of Rocky Mount*, 285 N.C. 135, 203 S.E. 2d 838 (1974). We are asked to decide whether G.S. Secs. 160A-331 to -338 (1982), the sole statutes governing electric service within city limits, determine the rights of a municipality competing to provide service within the corporate limits of another municipality. We find that they do.

G.S. Sec. 160A-331 (1982) establishes two categories of competitor—the primary and secondary supplier. A "primary supplier" is defined as

> a city that owns and maintains its own electric system, or a person, firm, or corporation that furnishes electric service within a city pursuant to a franchise granted by, or contract with, a city, or that, having furnished service pursuant to a franchise or contract, is continuing to furnish service within a city after the expiration of the franchise or contract.

G.S. Sec. 160A-331(4). Hertford concedes that it is not a "primary supplier" outside its own city limits. *Duke Power Co. v. City of High Point*, 22 N.C. App. 91, 205 S.E. 2d 774, *cert. denied*, 285 N.C. 661, 207 S.E. 2d 752 (1974) (dicta). A "secondary supplier" is

defined, in pertinent part, as a "person, firm, or corporation that furnishes electricity at retail to one or more consumers other than itself within the limits of a city but is not a primary supplier." G.S. Sec. 160A-331(5) (1982).

Plaintiffs assert that "the words 'person, firm or corporation' ordinarily denote a private corporation and not a municipality." The words "person, firm or corporation" are not defined within Chapter 160A; therefore, they are to be given their common and ordinary meaning, nothing else appearing. *In re The Appeal of Clayton-Marcus Co.*, 286 N.C. 215, 210 S.E. 2d 199 (1974). According to Webster's, a "person" is "a human being, a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and duties." Webster's Third International Dictionary 1686 (1968). There is no distinction drawn between public and private corporations. Significantly, the United States Supreme Court has long held that a municipality is a "person" within the meaning of Section 8 of the Sherman Act, as codified at 15 U.S.C. Sec. 7 (1976) and Sec. 1 of the Clayton Act, as codified at 15 U.S.C. Sec. 12 (1976). *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 55 L.Ed. 2d 364, 98 S.Ct. 1123 (1978). The sections cited above define a "person" to "include corporations . . . existing under or authorized by the laws of . . . any State. . . ." 15 U.S.C. Secs. 7 and 12 (1976). A "corporation" is defined as "a single person or object treated by the law as having a legal individuality or entity other than that of a natural person." Webster's Third New International Dictionary 510 (1968). There is no dispute that Hertford is a municipal corporation. Neither the ordinary definition of "person" nor the ordinary definition of "corporation" excludes public corporations.

Further, we note that a municipality has two persona: it exists as a government agency and as a private corporation. *Clark v. Scheld*, 253 N.C. 732, 117 S.E. 2d 838 (1961); *Millar v. Town of Wilson*, 222 N.C. 340, 23 S.E. 2d 42 (1942). In supplying electricity to a neighboring municipality for profit, a municipality is acting as a private corporation. *Accord City of Lafayette.*

Finally, we find support in the language of N.C. Gen. Stat. Sec. 160A-312 (1982), which provides, in pertinent part: "*Subject to Part 2 of this Article*, a city may acquire, construct, establish, enlarge, improve, maintain, own, and operate any public enter-

prise outside its corporate limits, within reasonable limitations." (Emphasis added.) A "public enterprise" includes electric service. N.C. Gen. Stat. Sec. 160A-311(1) (1982). Part 2, entitled Electric Service in Urban Areas, contains G.S. Secs. 160A-331 to -338 (1982), the provisions dealing with the rights of primary and secondary suppliers of electric service within city limits. The clear implication is that a municipality operating an electric service within the corporate limits of another municipality is subject to the provisions of G.S. Secs. 160A-331 to -338 (1982).

We are persuaded that Hertford, a municipal corporation, is a "person" or "corporation" within the meaning of G.S. Sec. 160A-331(5) (1982) and, therefore, qualifies as a "secondary supplier."

[2]   Next we decide whether Hertford's proposed activities as a "secondary supplier" within Winfall's corporate limits under G.S. Sec. 160A-331 and -332 (1982) exceed Hertford's statutory authority to operate electric systems outside its own corporate limits under G.S. Sec. 160A-312 (1982). *See State ex rel. Utilities Comm'n v. Virginia Electric and Power Co.,* 310 N.C. 302, 311 S.E. 2d 586 (1984); *Lumbee River Electric Corp. v. City of Fayetteville,* 309 N.C. 726, 309 S.E. 2d 209 (1983). A municipality has the authority to "acquire, construct, establish, enlarge, improve, maintain, own, and operate" electric systems outside its own corporate limits *"within reasonable limitations."* G.S. 160A-312 (1982). (Emphasis added.)

As a "secondary supplier," Hertford has the exclusive right to serve all premises in the annexed area, which were served by it, or to which any of its facilities were attached, on the date of annexation, 9 March 1981. G.S. Sec. 160A-332(a)(1) (1982). Moreover, Hertford has either exclusive or competitive rights to serve premises with initial service after 9 March 1981, which were either wholly or partially within 300 feet of its lines on 9 March 1981, depending on the proximity of the primary supplier's and other secondary suppliers' lines on 9 March 1981. G.S. Sec. 160A-332(a)(2)-(6) (1982).

Are Hertford's proposed activities "within reasonable limitations?" " 'The term "within reasonable limitations" does not refer solely to the territorial extent of the venture but embraces all facts and circumstances which affect the reasonableness of the venture.' " *Domestic Electric Svce, Inc. v. City of Rocky Mount,*

285 N.C. 135, 203 S.E. 2d 838, 844 (1974) (quoting *Public Svce Co. v. City of Shelby*, 252 N.C. 816, 823, 115 S.E. 2d 12, 17 (1960) ). Recently, in *Lumbee River*, our Supreme Court set out and applied the determinative factors in *Domestic Electric*; "each electric provider's level of current service in the area in question and particularly in the immediate vicinity of the potential customer, and the readiness, willingness, and ability of each to serve the potential customer." 309 N.C. at 738, 309 S.E. 2d at 217 (1983). Applying the above factors to this appeal, we find that Hertford was the sole provider of electric service in the annexed area on the date of annexation. Although Hertford and Albemarle both expressed a willingness to serve and appeared to have the financial and physical ability to serve, as of 9 March 1981, Albemarle was not ready to serve. *See Lumbee River.*

Therefore, we conclude that Hertford's continued service as a "secondary supplier" within Winfall's corporate limits after the date of annexation fell "within reasonable limitations." By granting Hertford the exclusive right to serve past and some future customers, G.S. Secs. 160A-331 and -332 (1982) prevent the unnecessary duplication of electric systems. Hertford's exclusive rights are tempered by N.C. Gen. Stat. Sec. 160A-334 (1982), giving the North Carolina Utilities Commission the authority and jurisdiction to order "any secondary supplier to cease and desist from furnishing electric service" based on inadequate service, high rates, or discriminatory practices.

III

For the reasons stated above, the trial court did not err in declaring Hertford a "secondary supplier" and in denying plaintiffs' motion for summary judgment.

Affirmed.

Judges HEDRICK and PHILLIPS concur.