STATE v. G. F. SIMMONS.

(Filed March 12, 1907).

*Indictment—Concealed Weapons—Exceptions—Ignorance—*
*Good Faith—Advice—Intention—Juries—Facts—Charge*
*—Error—Jurors Polled—Intimation of Opinion.*

1. In order to come within the exception of the statute (Revisal 1905, sec. 3708) prohibiting the carrying of concealed weapons, the defendant, otherwise having the authority, must have been in the actual performance of his duties at the time.

2. A person acting in ignorance of the law in good faith and upon advice of the Clerk of the Court or of an attorney, but in violation of the statute prohibiting the carrying of concealed weapons, is not excused.

3. The intention of the defendant to conceal a weapon on his person is immaterial, if from his own testimony it appears that he necessarily knew that he was carrying it concealed.

4. Juries should not only find the facts, but they should draw their own conclusions therefrom uninfluenced by the acts or language of the Court; and the language of a charge, "if you believe the evidence, the defendant is guilty, and you will return a verdict of guilty," is improper, though, standing alone, not reversible error.

5. It is error for the Court below, when informed by the jury in answer to his question, that some of them believed the defendant guilty and some not guilty, to poll the jury, ascertain from each that he believed the evidence, and then again instruct them, "if they believed the evidence, to return a verdict of guilty," it being an intimation of opinion upon the facts and calculated to prevent an impartial consideration of the case.

INDICTMENT for carrying a concealed weapon, tried before *Jones, J.,* and a jury, November Term, 1906, Superior Court of LENOIR County. From verdict and judgment, defendant appealed.

The defendant was indicted for carrying a concealed weapon, to-wit, a pistol. He attempted to justify upon the ground that he was Bird and Game Warden and entitled by Revisal, sec. 1868, to exercise all the power and authority of a constable at the common law and under the statutes of this State. He was not on duty when the pistol was found on his person. The weapon was in his possession on the night in question. He dropped it from his pocket into the mud, picked it up, stepped upon the sidewalk of South Street in Kinston and wiped it with his handkerchief. After cleaning it, he dropped it into his pocket. The pistol was first in his hand and then in his pocket, sometimes in view and sometimes not in view. The above is taken from the defendant's own testimony. He proposed to show by the Clerk of the Court that the latter advised him, when he took the oath of office, that he, being a constable, had a right to carry the pistol, and that he carried it under that belief; and he also proposed to testify that "he did not intend to conceal the pistol." All this testimony was excluded, and the defendant excepted. The evidence of the State tended to show that the

defendant carried the pistol on his person and that a part of the time it was concealed.

The Court charged the jury as follows: "If you believe the evidence, the defendant is guilty, and you will return a verdict of guilty." The jury retired and after being out a few minutes came into court, whereupon the Judge inquired of them what was their trouble in reaching a verdict, and they replied that some of them thought the defendant guilty and others thought him not guilty. The Court then inquired of each juror if he believed the evidence, and each juror replied that he did believe the evidence as given on the stand; whereupon the Court told the jury again: "If you believe the evidence, return a verdict of guilty." The defendant excepted to each of the instructions. There was a verdict of guilty and judgment entered thereon. Defendant appealed.

*Attorney-General* for the State.
*Loftin & Varser* and *M. H. Allen* for defendant.

WALKER, J., after stating the case: The fact that the defendant was game warden at the time he was found with the pistol in his pocket did not excuse him for carrying it concealed. Even if he was invested with the power and authority of a constable for all purposes, and not only to the extent that was necessary for the efficient discharge of his official duties as game warden, it appears that he was not then in the actual performance of those duties. He does not, therefore, come within the exception of the statute. Revisal, sec. 3708; *State v. Hayne,* 88 N. C., 625; *State v. Boone,* 132 N. C., 1107.

The advice of the Clerk of the Court, that the defendant had, as constable, the right to carry a pistol, is equally ineffectual as a defense to this indictment. "Ignorance of the law excuses no man." If he would take advice as to the

criminality of a contemplated act, he must be sure that it is correct, for otherwise he will be as guilty, if he does the act, as if he had not taken it. *State v. Boyett,* 32 N. C., 336; *State v. Dickens,* 2 N. C., 406. Even the advice of an attorney learned in the law has been held to be insufficient to protect his client against a criminal prosecution for illegally voting at an election. *State v. Downs,* 116 N. C., 1064. The rule is of general application in cases of this kind. We find it thus stated in 12 Cyc., at p. 155: "It is no defense for the accused to show that he believed in good faith that the law which he violated was unconstitutional. Nor will it avail him that he acted in good faith, under the advice of counsel; or that he is a foreigner, and that the act with which he is charged is not a crime in his country," citing numerous cases to support the text. There are, of course, some exceptions to the rule.

Defendant offered to testify that he did not intend to carry the weapon concealed. The criminal intent in this and in like offenses created by statute is the intent to do the forbidden act. *State v. McDonald,* 133 N. C., 684. The statute provides that the possession of a deadly weapon, if carried about the person, shall be *prima facie* evidence of concealment, if the accused is at the time off his premises. It is not necessary to a conviction that the State should show an intention to use the weapon for any unlawful purpose, for it is the intent to conceal and not the intent to use it in any particular way that renders the act of carrying it criminal. *State v. Dixon,* 114 N. C., 850; *State v. Reams,* 121 N. C., 556; *State v. Brown,* 125 N. C., 704. In this case, the defendant himself testified that he had the pistol in his pocket a part of the time, and that it was then concealed or hidden from view. It necessarily follows, if this be true, that he knew that it was thus concealed. He has shown no valid excuse for carrying it in his pocket "out of sight," and the

presumption of the statute, instead of being rebutted by the proof, as it should have been if he confidently expected an acquittal, was greatly strengthened, if not made conclusive. Upon his own statement, if found by the jury to be true, it would seem clear that the specific intent, which he proposed to prove, was, under the circumstances, altogether immaterial. He must be presumed to have intended to do that which he knowingly did. Knowledge that he was carrying the weapon concealed is equivalent, under the statute, to the criminal intent to conceal which is required by the law to exist, there being no lawful excuse for carrying it. *State v. Woodfin,* 87 N. C., 526; *State v. Lilly,* 116 N. C., 1049; *State·v. Erwin,* 91 N. C., 545; Broom's Legal Maxims (8 Ed.), p. 306, *et seq.* If the object of the defendant was to prove that he carried the pistol in his pocket, not for the purpose of concealing it and thus violating the law, but because he believed that he had the right as an officer to carry it, the testimony was equally immaterial, for he had no such right, and the mere fact that he thought so is of no avail. Such a construction of the statute as would justify him on that ground would defeat its very purpose. As said in *State v. Lilly, supra,* the gist of the offense is the manner of carrying the weapon. Evidence of the intent, such as that offered by the defendant, may be competent and relevant in some cases, but not in one of this character. Our case is governed by *State v. Dixon,* 114 N. C., 850; *State v. Pigford,* 117 N. C., 748; *State v. Brown,* 125 N. C., 704.

We have often intimated that a general instruction to the jury in the form of the one given by the Court is objectionable. *State v. Barrett,* 123 N. C., 753; *Sossaman v. Cruse,* 133 N. C., 470; *State v. Green,* 134 N. C., 658; *State v. Garland,* 138 N. C., 675. Speaking of a charge identical in language with the one given in this case, *Justice Henderson,* in *Bank v. Pugh,* 8 N. C., at p. 206, said: "The nature of

STATE v. SIMMONS.

the rejection (of the bond) is an inference of fact, to be drawn from the evidence which the Judge has, improperly, drawn for himself and the jury both, leaving to the latter only to say whether the witness swore truly or not. The jury are the constitutional judges, not only of the truth of testimony, but of the conclusions of *fact* resulting therefrom. It would repel the interference of juries, as far as the law will warrant, in all questions of law and, in like manner, the interference of the Judge in matters of fact." And in *Merrell v. Dudley,* 139 N. C., at p. 59, *Justice Hoke* thus refers to the subject: "The language is inexact, and this form of expression should be eschewed by the Judges in charging juries. This Court has heretofore called attention to it in a number of cases." We do not say that such an instruction, standing alone, will constitute reversible error, as that will depend upon the nature and circumstances of the particular case in which it is given and upon the strength of the probability that it prejudiced the complaining party. If it should clearly appear to have done so, we might deem it proper to order a new trial, but we take occasion again to express the hope that the strong and impressive words of *Judge Henderson,* which we have more than once quoted with approval, will be heeded, and that what we ourselves have said will have the effect of changing the form of expression and of conforming instructions more closely to the requirement of the statute. Revisal, sec. 535. As we reverse the judgment on another ground, we need not further discuss this exception, as it is sufficiently considered, for the purposes of this case, in what we have already said.

When the jury returned to court, after having been out for a few minutes, the Judge inquired of them as to their trouble in reaching a verdict, and they replied that some of them thought the defendant guilty and others thought he was not guilty; whereupon the Judge polled the jury, asking each

juror if he believed the evidence, when each replied that he did believe the evidence as given on the stand. This was not according to regular procedure or the approved precedents in such cases, if it was not a direct violation of the Act of 1796. "No Judge in giving a charge to the petit jury, either in a civil or a criminal action, shall give an opinion whether a fact is fully or sufficiently proven, such matter being the true office and province of the jury; but he shall state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon." Revisal, sec. 535. Besides being in effect an intimation of opinion as to what the verdict should be, the inquiry of the Judge and the manner of making it were calculated to deprive the jury of that freedom of thought and action which is so essential to an impartial consideration of the case and a proper discharge of their duty. *Nash v. Morton,* 48 N. C., 3; *State v. Shule,* 32 N. C., 153; *State v. Whit,* 50 N. C., at pp. 227 and 228. The evidence may, in the opinion of the Court, have been ever so strong against the defendant, yet it was for the jury to find the ultimate fact of guilt without any suggestion from the Court, direct or indirect, as to what that finding should be. *State v. Lilly,* 116 N. C., 1049. The presumption of innocence and the doctrine of reasonable doubt require that method to be pursued, and it is clearly enjoined by the statute we have cited, the restraining words of which define clearly the respective functions of Court and jury in the trial of causes.

There must be another trial because of this error in the remarks of the Court to the jury.

New Trial.