T. C. WILLIAMS, JR. AND MOTORS INSURANCE CORPORATION v. SOS-SOMAN'S FUNERAL HOME, INC., AND WILLIAM E. MILLER.

(Filed 4 June, 1958.)

1. **Automobiles § 17—**
    Where a collision occurs at an intersection controlled .by a traffic light within a municipality so that G.S. 20-158(c) is inapplicable, and the municipal ordinance is not introduced in evidence, the rights of the parties will be determined upon the basis that motorists must give the lights their well-recognized meaning and give that obedience to them which a reasonably prudent operator would give.

2. **Evidence § 6—**
    A party must establish that he belongs to the privileged class in order to be entitled to rely upon a statutory privilege.

3. **Automobiles § 17—**
    If the driver of an ambulance believes *bona fide* that he is operating the vehicle on an emergency trip and gives the warning required by statute, he is accorded the statutory privilege and is entitled to rely on the assumption that other motorists hearing and understanding the sound of his siren will yield the right of way.

4. **Same—**
    Notwithstanding the unequivocal testimony of certain witnesses that they heard the siren of the ambulance operated by defendant for a distance of some several blocks, the testimony of other witnesses, equally unequivocal, that they did not hear the siren until the ambulance was within a few feet of the intersection, is some evidence that the siren was

not in fact sounded in time to provide a warning to plaintiff motorist approaching along the intersecting street.

**5. Same—**

Provision of an ordinance permitting ambulances on emergency duty, giving proper warning, to proceed past red or stop signals after slowing down as may be necessary for operation, grants the privilege only when the ambulance can proceed with safety to others who have a legal invitation to use the intersection.

**6. Automobiles § 41g—**

In this action by a motorist entering an intersection while faced with the green traffic light to recover for damages and injuries received in a collision with an ambulance entering the intersection with its siren sounding and its red lights flashing, nonsuit on the ground that the ambulance had the right of way as a matter of law is properly denied when the evidence is conflicting as to whether plaintiff motorist could or should have heard the siren in time to have yielded the right of way and as to the speed at which the ambulance entered the intersection.

**7. Automobiles § 17—**

The duty of a motorist, even though entering an intersection while faced with the green traffic light, to use ordinary care and maintain a proper lookout, is not to be measured by the duty of a motorist traversing a railroad crossing, and although a motorist traversing an intersection must be vigilant and is charged with the duty of noting traffic along the intersecting street which a reasonably prudent man would see under the circumstances, he is not required to anticipate negligence on the part of other drivers.

**8. Automobiles §§ 42g, 46— Evidence held not to show contributory negligence as a matter of law on part of motorist, entering intersection with green light, in failing to yield right of way to ambulance.**

The evidence tended to show that plaintiff entered an intersection within a municipality at a lawful speed while faced with the green traffic light and that he did not hear the siren of an ambulance approaching from plaintiff's right along the intersecting street until the ambulance was a short distance from the intersection, that he looked for approaching traffic at four to eight car lengths from the intersection, and that the ambulance struck plaintiff's vehicle on its right. There was evidence that obstructions obscured the view between the vehicles until they were within 40 or 50 feet of the intersection, and that, although the ambulance had its red lights flashing and its siren sounding, the warning was not heard by certain witnesses until the ambulance was within a few feet of the intersection. *Held:* The evidence fails to show contributory negligence on the part of plaintiff as a matter of law, and an instruction that if plaintiff was within range where he could have heard the siren had he been listening he would be deemed to have heard that which he should have heard, but refusing to charge that the failure of plaintiff to have looked for approaching traffic along the intersecting street at a time when such vigilance would have been effective, constituted contributory negligence as a matter of law, is without error.

JOHNSON, J., took no part in the consideration or decision of this case.

APPEAL by defendants from *Phillips, J.,* December 2, 1957 Regular Civil Term of CASWELL.

This action grows out of a collision of motor vehicles occurring about 1:00 p.m. on 5 July 1956 at the intersection of King and Concord Streets in Morganton. Plaintiff Williams was the owner and operator of a Chevrolet automobile. Williams sustained personal injuries. His automobile was damaged. Motors Insurance Corporation, as a collision insurance carrier on Williams' automobile, complied with the provisions of its policy and asserted its right as subrogee. Sossoman's Funeral Home was the owner of a Cadillac ambulance, the other motor vehicle involved in the collision. Defendant Miller was the driver of the ambulance.

King Street lies in a north-south direction. It is intersected by Concord Street, which lies in an east-west direction. Each street is thirty-two feet wide. The intersection is in a residential area. Hanging over the center of the intersection is an ordinary traffic light with the usual green, yellow, and red lenses. Williams was driving in a southwardly direction on King Street at a speed of 20-25 m.p.h. The ambulance was proceeding eastwardly on an asserted emergency call. Its speed is in controversy. Defendants' evidence tends to fix its speed at 30 m.p.h. or less while plaintiffs' evidence describes it as: "It was really coming pretty fast," and "at least 50 m.p.h." Defendant Miller testified the ambulance was equipped with five red lights, three on the top and one on each fender. In addition to the red lights the ambulance had a siren which, according to the testimony for defendants, could be heard by occupants of other automobiles who had their windows down five or six blocks away. Defendants' evidence was that the red lights and siren were put in operation when the ambulance started on its journey a block and a half from the point of collision. Plaintiff and the other occupants of his vehicle testified that they heard no sound of siren until the ambulance was within 30 or 40 feet of the intersection. There was additional testimony for plaintiff by witnesses in a position to hear that they did not hear the siren until the ambulance was within a few feet of the intersection.

At the northwest intersection of King and Concord is an embankment some three feet high and shrubbery which obstruct the view of operators of motor vehicles traveling as the Chevrolet and ambulance were traveling until one reached a point about 40 to 50 feet from the intersection at which time a driver could see 50 yards down the intersecting street.

The collision occurred in the southwest quadrant of the intersection.

The front of the ambulance struck the right side of the Chevrolet between the front door and the rear bumper. The Chevrolet was struck with such force that it was knocked against and broke a fire hydrant at the southeast corner of the intersection.

The Chevrolet approached and entered the intersection when the traffic light showed green on King Street.

Plaintiffs charge negligence against defendants in that (1) Miller operated his vehicle in a careless and reckless manner; (2) Miller failed to heed the red traffic light and yield the right of way to plaintiff; (3) Miller attempted to traverse the intersection at an unlawful rate of speed; (4) Miller failed to keep and maintain a reasonable and proper lookout for other traffic.

Defendants denied all allegations of negligence, and as a further defense pleaded that Miller was operating a duly authorized ambulance on an emergency mission, that he was operating the vehicle carefully and prudently, that proper warning signals were being given, and pursuant to provisions of an ordinance of Morganton and G.S. 20-156, he was not required to stop for the red light but was accorded priority in crossing the intersection. They also pleaded contributory negligence on the part of plaintiff in failing to keep a proper lookout and in failing to yield the right of way to the ambulance. The negligence asserted as a defense was also charged by defendants as the basis for a counterclaim for damages to the ambulance.

The jury found plaintiff was injured by the negligence of defendants, that he was not contributorily negligent, and assessed both property and personal injury damages. The issues relating to the counterclaim were not answered. Judgment was entered on the verdict. Defendants excepted and appealed.

*D. Emerson Scarborough and H. Clay Hemric for plaintiff, appellees.*
*Smith, Moore, Smith, Schell & Hunter for defendant, appellants.*

RODMAN, J. By motions to nonsuit defendants challenge the right of plaintiffs to recover. The reasons assigned are: (1) Defendant's vehicle was "an authorized emergency vehicle" on an emergency errand, and as such, given by statute and ordinance priority in the right to use the intersection and the right to travel at a speed made unlawful as to other vehicles. They merely exercised the rights accorded the ambulance, and negligence cannot be predicated on the exercise of legal rights. (2) Williams, operator of the Chevrolet, was contributorily negligent in (a) failing to yield the right of way to defendant's vehicle and (b) in failing to maintain a reasonable and proper lookout for emergency and other vehicles on the intersecting highway.

This collision occurred in a municipality. Hence the provisions of G.S. 20-158(c), relating to traffic lights outside of towns, has no application. No ordinance of Morganton declaring the consequences of a failure to heed the light was offered in evidence. The operators of the motor vehicles were, therefore, to interpret the signals and give that obedience thereto which a reasonably prudent operator would give. *Wilson v. Kennedy,* 248 N.C. 74.

The use of these lights is too general and well-known to raise any doubt as to meaning of each color and what is expected of an operator when confronted with a red light. It tells him to stop. Defendants recognize this meaning and ordinary application. They concede for the purpose of this appeal Williams had the green light and Miller, the red or stop light. But they say the red did not tell Miller to stop because (a) the State statute, G.S. 20-156, gave Miller the right of way, and (b) Morganton's ordinance declared authorized emergency vehicles may "proceed past red or stop signal or stop sign but only after slowing down as may be necessary for operation."

These laws do accord a privilege, but to exercise the privilege one must establish that he belongs to the privileged class. As said in 35 C.J.S. 185: "As a general rule, in an action or proceeding to enforce or establish an exemption right the burden is on him who seeks to enforce or establish it." Applications of the rule are illustrated in *Sabine v. Gill,* 229 N.C. 599, 51 S.E. 2d 1; *Henderson v. Gill,* 229 N.C. 313, 49 S.E. 2d 754; *S. v. Kelly,* 186 N.C. 365, 119 S.E. 755; *S. v. Simmons,* 143 N.C. 613; *S v Hayne,* 88 N.C. 625; *S. v. Hogg,* 6 N.C. 319; *Williams v. Branson,* 5 N.C. 417; *Oakley v. Alleghany County,* 193 A 316.

For the purpose of this appeal we may, as the parties and trial court apparently did, treat "official business," when applied to private automobiles, as meaning a trip made when the operator of the vehicle bona fide believes an emergency exists which requires expeditious movement. If the driver in fact has such belief and meets the statutory test by giving warning, he is accorded the necessary privilege. The audible sound required by the statute is one heard and understood or which should have been heard and its meaning understood by a reasonably prudent operator called upon to yield the right of way. *Funeral Service v. Coach Lines,* 248 N.C. 146.

Notwithstanding the unequivocal evidence from witnesses for defendants that they heard the siren when the ambulance began its journey and continued to hear it until the moment of the impact, the equally unequivocal testimony of the occupants of the Chevrolet and another witness just a few feet from the intersection that they did not hear the siren until the ambulance was within a few feet of the intersection is some evidence that the siren was not in fact sounded in time

to provide a warning to the plaintiffs. *Carruthers v. R.R.*, 218 N.C. 49, 9 S.E. 2d 498; *Johnson v. R.R.*, 205 N.C. 127, 170 S.E. 120; *Edwards v. R.R.*, 129 N.C. 78.

With this discrepancy in the evidence, the court could not, as a matter of law, hold that Miller had complied with the terms of the statute and was entitled to the right of way.

It is true, as defendants say, that the ordinance of Morganton which permits ambulances to "proceed past red or stop signals" does not require the siren to be sounded, but it does limit their right to proceed "only after slowing down as may be necessary for operation." This necessarily means, we think, that the special privilege can only be exercised when the ambulance can proceed with safety to others who have a legal invitation to use the intersection. To give it any other interpretation would change an ordinance intended to facilitate the safe movement of vehicles across intersecting highways into a trap for those invited to enter.

With the burden of proof on defendants to establish they belonged in the privileged class described in the statute and ordinance, the court could not, as a matter of law, hold that they had the prior right to use the intersection. If they did not have such right, plaintiffs were not, as a matter of law, negligent in accepting the invitation extended to them by the green light.

The assertion that the evidence establishes without contradiction that Williams failed to exercise the vigilance of a reasonably prudent driver is also raised by exceptions to the charge and is discussed in that connection.

The motion to nonsuit was properly overruled and the issue of contributory negligence was properly submitted to the jury.

Assignments of error 8, 9, 10, 11, 12, 13, 14, and 15 question the accuracy and sufficiency of the charge as it relates to the duty of an operator to look for the movement of other vehicles at intersections and the duty of an operator of an ordinary vehicle to yield the right of way to emergency vehicles.

The court, in charging the jury, gave as the basic rules applicable to the rights and duties of plaintiff Williams, the law as stated in *Cox v. Freight Lines*, 236 N.C. 72, 72 S.E. 2d 25, and *Hyder v. Battery Co.*, 242 N.C. 553, 89 S.E. 2d 124. The jury was told that notwithstanding a green traffic light faced the operator of a motor vehicle, he could not go forward blindly, but was required to use ordinary care, to maintain a proper lookout, to keep his vehicle under reasonable control, and to drive his vehicle at a speed reasonable and prudent under existing conditions. Dealing specifically with the duty to yield the right of way to emergency vehicles, the court charged: "Regardless of

whether the plaintiff actually heard the siren, if you find from the evidence that the siren was audibly sounded and that the plaintiff was within range where he could have heard the siren had he been listening, then the plaintiff will be deemed to have heard that which he should have heard and that which a reasonably prudent person exercising due care would have heard.

"The operator of an authorized emergency vehicle, being the defendant Miller in this case, while on an emergency call, has the right to proceed upon the assumption that when the required signal by siren is given, that other users of the highway will yield the right of way."

We think the court correctly measured the rights of an operator of an emergency vehicle and the duty of the driver of an ordinary vehicle to respect that right.

Williams testified that when three or four or five car lengths from the intersection, he observed the traffic light was green. He continued to observe it until he entered the intersection and so long as he could see the light, it remained green. On cross-examination defendants sought to show that Williams' attention was on the traffic light to the exclusion of traffic on the streets. In response to questions asked, he said that he looked for approaching traffic. Repeated questions led him to estimate the places at which he looked or attempted to look at four to eight car lengths from the intersection. Defendants point to the fact that vision down the intersecting street was obstructed until. the driver reached a point estimated at 30 to 50 feet from the intersection. They contend that to look eight car lengths—100 feet or more, they say— from the intersection would avail nothing. Such attempt to look would, as a matter of law, fail to meet the standard of the prudent man and the court erred in not so informing the jury instead of leaving it to the jury to measure defendants' conduct under the rules which it had given.

The rule applicable to the duty of a motorist confronted with a green light is not to be measured by the duty of one traversing a railroad crossing. A railroad crossing is itself notice of danger. *Coleman v. R.R.*, 153 N.C. 322; 69 S.E. 251; *Quinn v. R.R.*, 213 N.C. 48, 195 S.E. 85. The traveler knows trains do not normally stop at highway crossings, and from the nature of the operation are not expected to stop. Reasonable prudence dictates the traveler should take precaution to see that he can cross in safety before entering the crossing.

Automobiles, unlike trains, may be stopped in comparatively short distances. They are not confined to a single line of movement. Of course the motorist must, as the court charged, be vigilant. He must remain alert and see and heed those things which a prudent driver

would see and guard against, but he is not required to anticipate negligence on the part of other drivers. *Jackson v. McCoury,* 247 N.C. 502; *Simmons v. Rogers,* 247 N.C. 340; *Williamson v. Randall,* 248 N.C. 20; *Hyder v. Battery Co., supra.*

We think the court's charge correct, when read as a whole, and no error was committed in permitting the jury to determine whether on all the evidence Williams was reasonably vigilant in the operation of his vehicle.

We interpret the ordinance of Morganton authorizing the chief of police to designate ambulances which may be used as emergency vehicles as empowering him to license specific vehicles for that purpose and not to authorize him to grant blanket authority to some person to operate any vehicle as an ambulance in an emergency. Sound reason would seem to exist for the interpretation we place on it. Presumably he would not authorize or license a particular vehicle that was not properly and adequately equipped both to handle patients and to warn other operators of its approach when used in an emergency. All of the ordinances are not in the record, and we do not know what standards were prescribed in order to obtain authorization. The constitutionality of the ordinance is not here challenged.

The evidence which defendants offered with respect to the authority to operate emergency vehicles by Sossoman's Funeral Home does not appear to be directed to this specific vehicle but to vehicles in general.

But conceding that due authority had been given to operate this particular vehicle in emergencies, the ordinance, as noted with respect to the motion to nonsuit, does not, as we read it, do more than permit its operator to disregard the red light when he can do so with safety. The charge dealing with the duty of the drivers to exercise due care in the operation of their vehicles was, we think, sufficient to cover this phase of the case.

Our examination of the assignments discloses no prejudicial error. No error.

JOHNSON, J., took no part in the consideration or decision of this case.