An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-956

Filed: 1 September 2015

Mecklenburg County, No. 10 CVS 18586

MICHAEL H. COOK, Plaintiff,

v.

GINNY ELIZABETH TURLINGTON, Defendant.

Appeal by defendant from judgment entered 7 September 2012 and order entered 9 January 2014 by Judge H. William Constangy in Mecklenburg County Superior Court. Heard in the Court of Appeals 5 February 2015.

*The Sasser Law Firm, P.A., by Charles McB. Sasser, for plaintiff-appellee.*

*Golding Holden & Pope, LLP, by James W. Pope, Robert J. Aylward and Brooks T. Pope, for defendant-appellant.*

GEER, Judge.

Defendant Ginny Elizabeth Turlington appeals from a final judgment in favor of plaintiff Michael H. Cook and from an order denying defendant's motion for a new trial and judgment notwithstanding the verdict. On appeal, defendant argues that the trial court erred in directing a verdict in favor of plaintiff on the issues of defendant's negligence and plaintiff's contributory negligence. The evidence, when

viewed in a light most favorable to defendant, shows that defendant rear-ended plaintiff's motorcycle when plaintiff stopped at an intersection to yield to a fire truck.

Even assuming that the light was green in plaintiff's and defendant's favor, and that defendant did not hear or see the fire truck approaching, the only inference to be drawn from the evidence is that defendant was negligent by following too closely or failing to keep a proper lookout. With respect to contributory negligence, we reject defendant's suggestion that a reasonable jury could find that plaintiff should have proceeded through the intersection in front of the oncoming fire truck in order to avoid being rear-ended by defendant. Accordingly, we hold that the trial court properly entered a directed verdict in favor of plaintiff on the issues of negligence and contributory negligence.

## Facts

This lawsuit arises out of a rear-end collision that occurred on 3 September 2007 around 1:30 p.m. at the intersection of 36th Street and the Plaza in Charlotte, North Carolina. Plaintiff filed suit on 3 September 2010, asserting a claim for negligence against defendant and negligent entrustment against Jeffery Scott Smith, the owner of the vehicle driven by defendant. On 18 October 2010, defendants filed an answer in which they asserted that plaintiff was contributorily negligent. On 1 July 2011, plaintiff voluntarily dismissed his claim of negligent entrustment against

Mr. Smith. The case proceeded to trial against defendant at the 6 August 2012 Civil Session of the Superior Court of Mecklenburg County.

Based upon the evidence presented at trial, the following facts are undisputed. On 3 September 2007, plaintiff was riding a motorcycle south down the Plaza. Defendant was also heading south on the Plaza in her Nissan Pathfinder behind plaintiff's motorcycle. The Plaza is a four lane road running north to south, with two lanes in each direction and a median in the center. The speed limit on the Plaza is 35 miles per hour, and the road is very straight. The weather that day was clear and dry.

Defendant first saw plaintiff's motorcycle shortly after she turned onto the Plaza. She and plaintiff were travelling in the same direction, in the left hand lane, and at the same rate of speed. There were no other vehicles between defendant and plaintiff and nothing blocking defendant's view of plaintiff. When plaintiff reached the intersection of the Plaza and East 36th Street, he did not proceed through the intersection because he heard and saw a fire truck, with its lights flashing and siren sounding, travelling east on East 36th Street approaching the intersection from his right. The car in the right southbound lane also did not proceed through the intersection. Defendant, however, did not see or hear the fire truck and did not brake in time to avoid colliding into the back of plaintiff's motorcycle.

The remaining details regarding the circumstances leading to the collision are disputed somewhat. At trial, in addition to plaintiff and defendant, the following eye witnesses testified: David Ernest Dobbins, the fire truck engineer; Alicia Hendrix, the driver of a green car in the right lane next to plaintiff; and Ulysses West, the driver of a white truck that was travelling behind defendant.

According to plaintiff, prior to the collision, he was travelling south on the Plaza in the right lane at about 35 miles per hour. About a block away from the intersection of the Plaza and East 36th Street, plaintiff signaled and moved into the left lane. Once plaintiff was in the left lane, or a little bit before, the light at the intersection turned red, so he slowed down and came to a gradual stop at the white line, next to a green vehicle that was stopped in the right lane. As soon as plaintiff reached the intersection, he heard the fire truck and then saw the fire truck approaching from his right approximately one block away. Plaintiff testified that once he heard the fire truck, "I sat back on my motorcycle and crossed my arms and looked at the lady beside me and I looked at the firetruck [sic] beside me also and just stared at it just waiting for it to make its turn in front of us." He estimated that he was rear-ended approximately 30 seconds later.

Ms. Hendrix, the driver of the green car stopped in right lane next to plaintiff, testified that when plaintiff pulled up in the left lane, the light was still red. She estimated that she and plaintiff were stopped at the intersection for two or three

seconds before the light turned green. Once the light turned green, however, Ms. Hendrix did not proceed through the intersection because she heard the fire truck coming.

Mr. Dobbins, the fire truck driver, testified that he was travelling about 55 to 60 miles per hour down 36th Street. As he approached the Plaza, he slowed down to gain control of the intersection. When he was about eight truck lengths away from the intersection, he saw plaintiff look up and see him, and stop quickly. Mr. Dobbins explained that plaintiff "stopped it quick. I don't think he was going at a high rate of speed when he stopped it. It was almost like he had just taken off or something, you know. But I know he just -- he looked at me, boom, he stopped." When Mr. Dobbins saw that plaintiff's motorcycle and Ms. Hendrix's vehicle were both stopped, and that plaintiff was looking over at him, he knew he had control of the intersection. When he saw defendant's vehicle approaching from behind plaintiff, he yelled to his captain "She's going to hit him" two or three times before the collision occurred. Mr. Dobbins saw that defendant had a phone up to her ear, and he believed that she was distracted and talking on the phone. It appeared to Mr. Dobbins that defendant did not attempt to slow down or put on the brakes until after she had crashed into plaintiff's motorcycle.

Defendant and Mr. West testified for the defense. According to defendant, she was travelling southbound on the Plaza at about 35 miles per hour and was about

two or three car lengths behind plaintiff. She was listening to the radio at a "normal or a little softer" volume and her windows were rolled up. As she approached 36th Street, the light was green. She then saw plaintiff stop quickly, so she slammed on her brakes and slid into him. She did not see or hear the fire truck until after the collision. She denied that she was talking on the phone when the crash occurred.

Mr. West was driving a white truck southbound on the Plaza behind plaintiff and defendant. Mr. West testified that after plaintiff moved into the left lane in front of defendant, Mr. West lost full visibility of plaintiff's motorcycle, but was certain that "it wasn't a full distance" between defendant's vehicle and plaintiff's motorcycle. As the vehicles approached 36th Street, Mr. West had his windows rolled down and could hear a fire truck siren, but could not tell where it was coming from. He does not recall there being any vehicles already stopped at the intersection at any time up to the point he heard the sirens. When Mr. West saw the fire truck, it was about a block away from the intersection. He testified that as he approached the intersection, the light was green, but that all the cars made an "immediate stop" when they heard the fire truck sirens. Because of the position of his truck behind defendant's vehicle, Mr. West was unable to see the manner in which plaintiff stopped in front of defendant.

At the close of all evidence, plaintiff moved for a directed verdict as to the issues of defendant's negligence and plaintiff's contributory negligence. The trial court granted plaintiff's motions and submitted only the issue of proximate cause and

damages to the jury. In accordance with the jury's verdict, the trial court, on 7 September 2012, entered a judgment against defendant in the amount of $535,732.65.

On 10 September 2012, defendant filed a Motion for New Trial and Judgment Notwithstanding the Verdict pursuant to Rules 50(b) and 59 of the Rules of Civil Procedure. A hearing was held on defendant's motion on 18 February 2013, and, on 9 January 2014, the trial court entered an order denying the motion. Defendant timely appealed both the judgment and the order to this Court.

## Discussion

On appeal, defendant argues that the trial court erred in granting plaintiff's motion for a directed verdict against defendant as to negligence and contributory negligence. "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991). "In determining the sufficiency of the evidence to withstand a motion for a directed verdict, all of the evidence which supports the non-movant's claim must be taken as true and considered in the light most favorable to the non-movant, giving the non-movant the benefit of every reasonable inference which may legitimately be drawn therefrom and resolving contradictions, conflicts, and inconsistencies in the non-movant's favor." *Turner v. Duke Univ.*, 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989).

Plaintiff's Contributory Negligence

We first address whether the trial court erred in granting plaintiff's motion for a directed verdict as to plaintiff's contributory negligence. " 'Contributory negligence is negligence on the part of the plaintiff which joins, simultaneously or successively, with the negligence of the defendant . . . to produce the injury of which the plaintiff complains.' " *Seay v. Snyder*, 181 N.C. App. 248, 251, 638 S.E.2d 584, 587 (2007) (quoting *Bosley v. Alexander*, 114 N.C. App. 470, 472, 442 S.E.2d 82, 83 (1994)).

"A defendant who asserts contributory negligence as a defense has the burden of proving it." *White v. Greer*, 55 N.C. App. 450, 452, 285 S.E.2d 848, 850 (1982). Therefore, defendant has the burden of showing " '(1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury.' " *Seay*, 181 N.C. App. at 251, 638 S.E.2d at 587 (quoting *Whisnant v. Herrera*, 166 N.C. App. 719, 722, 603 S.E.2d 847, 850 (2004)). Where, as here, the plaintiff moves for a directed verdict on the defendant's defense of contributory negligence, the motion should be denied "if there is more than a scintilla of evidence supporting each element of [defendants'] claim that plaintiff was contributorily negligent[.]" *Hawley v. Cash*, 155 N.C. App. 580, 583, 574 S.E.2d 684, 686 (2002) (internal quotation marks omitted).

Defendant asserts that plaintiff was negligent when he "abruptly and without warning applied the brakes while the traffic signal was emitting a green light in their

direction of travel." We disagree. As plaintiff correctly points out, a green light " 'is not a command to go, but a qualified permission to proceed lawfully and carefully in the direction indicated. In other words, notwithstanding a favorable light, the fundamental obligation of using due and reasonable care applies.' " *McBride v. Freeze*, 268 N.C. 681, 683, 151 S.E.2d 661, 663 (1966) (quoting *Hyder v. Asheville Storage Battery Co.*, 242 N.C. 553, 557, 89 S.E.2d 124, 128 (1955)).

Pertinent to the facts in this case, N.C. Gen. Stat. § 20-156(b) (2013) requires vehicles to yield the right-of-way to emergency vehicles at intersections, even when the light is in their favor:

> The driver of a vehicle upon the highway shall yield the right-of-way to . . . fire department vehicles . . . when the operators of said vehicles are giving a warning signal by appropriate light and by bell, siren or exhaust whistle audible under normal conditions from a distance not less than 1,000 feet. When appropriate warning signals are being given, as provided in this subsection, an emergency vehicle may proceed through an intersection or other place when the emergency vehicle is facing . . . a traffic light which is emitting a . . . red light.

As explained by our Supreme Court, the duty to yield to an emergency vehicle under this statute does not apply "until an appropriate warning has been directed to him, and he has reasonable opportunity to yield his prior right. The audible sound which the statute, G.S. 20-156(b), requires is such a sound as was in fact heard and comprehended, or should have been heard and its meaning understood, by a reasonably prudent operator called upon to yield the right of way." *McEwen Funeral*

*Serv., Inc. v. Charlotte City Coach Lines, Inc.*, 248 N.C. 146, 151, 102 S.E.2d 816, 820-21 (1958).  Plaintiff, Ms. Hendrix in the green car in the right lane, and Mr. West in the white truck behind defendant, each heard the fire truck's siren and stopped their vehicles to allow the fire truck to pass, despite the light being green in their favor.  A reasonable jury could not find that plaintiff's decision not to proceed through the intersection was unreasonable under these circumstances.

Defendant argues, nevertheless, that plaintiff violated N.C. Gen. Stat. § 20-154(a) (2013), which provides, in pertinent part, that:

> The driver of any vehicle upon a highway or public vehicular area before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement.

This statute imposes two duties upon a driver who intends to turn or stop: (1) "the driver must 'see that the movement can be made in safety[,]'" and (2) "the driver must 'give the required signal when the operation of any other vehicle may be affected.'" *Blankley v. Martin*, 101 N.C. App. 175, 179-80, 398 S.E.2d 606, 609 (1990) (quoting *Clarke v. Holman*, 274 N.C. 425, 429, 163 S.E.2d 783, 786 (1968)).  A driver may signal his intention to stop with a hand signal "or by any mechanical or electrical signal device approved by the Division."  N.C. Gen. Stat. § 20-154(b).  Our case law

indicates that brake lights are an appropriate way to signal one's intention to stop. *See Griffin v. Ward*, 267 N.C. 296, 298, 148 S.E.2d 133, 135 (1966) (driver's negligence based on a violation of N.C. Gen. Stat. § 20-154 for failure to signal could be "based upon the statement of the plaintiff that she saw no brake lights burning on the rear of his car"); *Warner v. Lazarus*, 229 N.C. 27, 29, 47 S.E.2d 496, 498 (1948) (noting driver "considered the flash of the brake light on the [preceding] car as a signal that the driver of the car intended to stop or at least to slow down"). *See also State v. Heien*, 366 N.C. 271, 275, 737 S.E.2d 351, 354 (2012) (noting that pursuant to N.C. Gen. Stat. § 20-129, all motorists have a duty to ensure that they have at least one functioning brake light). In this case, plaintiff has not pointed to any evidence that the brake lights on plaintiff's motorcycle did not properly function.

Furthermore, our Supreme Court has held that N.C. Gen. Stat. § 20-154 "is not applicable where the driver has no choice." *Griffin*, 267 N.C. at 298, 148 S.E.2d at 135. For example, in *Griffin*, the "defendant was confronted with a situation which demanded that he stop because the line of cars in front of him had done so and he could not turn left because of oncoming traffic." *Id.* Additionally, "[i]t had been raining and the windows of his car were up so he could give no hand signal[.]" *Id.* Therefore, the only applicable provision of N.C. Gen. Stat. § 20-154 was defendant's duty to signal his intention to stop through the use of his brake lights. 267 N.C. at 298, 148 S.E.2d at 135.

Here, as in *Griffin*, plaintiff was "confronted with a situation which demanded that he stop" -- the approaching fire truck with its sirens blaring to which he had a duty to yield. *Id.* Defendant suggests, nevertheless, that plaintiff should have continued on through the intersection in front of the fire truck instead of stopping suddenly and risking being rear-ended by the vehicle behind him. We disagree.

It is well established that a person " 'is entitled to assume and to act upon the assumption that every other person will perform his duty and obey the law and that he will not be exposed to danger which can come to him only from the violation of duty or law by such other person.' " *Powell v. Lloyd*, 234 N.C. 481, 485, 67 S.E.2d 664, 666 (1951) (quoting *Chaffin v. Brame*, 233 N.C. 377, 380-81, 64 S.E.2d 276, 279 (1951)). As explained above, all drivers who actually heard, or should have heard, the fire truck's sirens had a corresponding duty to yield to the fire truck as it passed through the intersection. Plaintiff heard the siren and was entitled to assume that the vehicles around him would also hear the siren and comply with their duty to yield to the fire truck, and stop their vehicles before reaching the intersection. At the very least, he was entitled to assume that the vehicles behind him would maintain a safe distance and exercise reasonable care to brake when they saw plaintiff and other vehicles coming to a stop.

Defendant additionally cites *Anderson v. Talman Office Supplies, Inc.*, 234 N.C. 142, 66 S.E.2d 677 (1951), and *Blankley* in support of her argument that plaintiff

was contributorily negligent. In *Anderson*, the defendant was traveling in the left hand lane when he heard an emergency vehicle approaching from behind with its siren activated. 234 N.C. at 143, 66 S.E.2d at 679. The defendant moved right into the center lane of traffic and was rear-ended by the plaintiff's vehicle. *Id.* The defendant argued that he was not negligent because he had a statutory duty pursuant to N.C. Gen. Stat. § 20-157 to move to the right side of the road immediately upon hearing the siren of an emergency vehicle. 234 N.C. at 144, 66 S.E.2d at 679. This Court rejected defendant's argument and held that the "approach of a police vehicle giving a signal by siren did not nullify or suspend the provisions of G.S. 20-154, or relieve the defendant . . . of the duty to ascertain, before turning to his right, that such movement could be made in safety, or to signal any vehicle approaching from the rear." *Id.* at 145, 66 S.E.2d at 680.

The facts of *Anderson* are easily distinguishable from the facts of this case. In *Anderson*, the defendant had a duty to pull to the right side of the road to allow an emergency vehicle approaching from behind to pass him. The defendant changed lanes suddenly and without signaling and pulled out in front of another vehicle in a separate lane. The approaching vehicle had no reason to anticipate the defendant's sudden movements. Further, prior to the defendant's sudden movement, there was no risk of the defendant colliding with the emergency vehicle. Any delay in moving to the right would have only resulted in delaying the emergency vehicle's passage.

In contrast, here, plaintiff stopped within his same lane of travel to comply with his duty to yield to an emergency vehicle passing by in the intersection in front of him. If the plaintiff had failed to yield to the fire truck, it could have resulted in more than simply delaying the fire truck's passage through the intersection -- it could have resulted in a collision with the fire truck. Further, plaintiff did not switch lanes and suddenly pull out in front of another vehicle. Rather, plaintiff simply came to a stop in his own lane of travel. Even in the event that the vehicle behind plaintiff did not hear the siren, it nevertheless had a duty to keep a proper lookout and maintain a safe distance that "should be sufficient to enable the operator of the car behind to avoid danger in case of a sudden stop or decrease in speed by the vehicle ahead under circumstances which should reasonably be anticipated by the following driver." *Beanblossom v. Thomas*, 266 N.C. 181, 188, 146 S.E.2d 36, 42 (1966).

*Blankley* is also distinguishable from this case. In *Blankley*, the defendant rear-ended the plaintiff's vehicle after the plaintiff had stopped to make a left turn. 101 N.C. App. at 176-77, 398 S.E.2d at 607. The issue on appeal was whether the trial court erred by instructing the jury on plaintiff's contributory negligence. *Id.* at 178, 398 S.E.2d at 608. The Court recognized that N.C. Gen. Stat. § 20-154(b) provides that " 'in all areas where the speed limit is 45 miles per hour or higher and the operator intends to turn from a direct line of travel, a signal of intention to turn from a direct line of travel shall be given continuously during the last 200 feet

traveled before turning.'" *Id.* at 179, 398 S.E.2d at 609 (quoting N.C. Gen. Stat. § 20-154(b) (1989)). Because conflicting evidence was presented concerning whether and for how long the plaintiff turned on his left turn signal before stopping, this Court held that the trial court properly submitted the issue of plaintiff's contributory negligence to the jury. Here, plaintiff was not traveling in an area where the speed limit was 45 miles per hour and he did not intend to turn. Therefore, the provision of N.C. Gen. Stat. § 20-154(b) requiring a turn signal does not apply, and *Blankley* is inapposite.

Defendant has failed to point to any evidence that plaintiff's decision to yield to the fire truck was unreasonable given the evidence presented at trial. Although defendant suggests that plaintiff should have driven through the intersection, risking a collision with the fire truck, in order to avoid being rear-ended by defendant, she points to no specific evidence in the record which suggests that plaintiff would have had time to clear the intersection before the fire truck reached it. As stated by this Court in *Myrick v. Peeden*, 113 N.C. App. 638, 643, 439 S.E.2d 816, 819 (1994) (quoting *Snead v. Holloman*, 101 N.C. App. 462, 466, 400 S.E.2d 91, 93 (1991)), "'[e]vidence which merely raises conjecture on the issue of contributory negligence is insufficient to go to the jury.'" We hold that the trial court did not err by granting a directed verdict in favor of plaintiff on the issue of contributory negligence. *See Jones v. Holt*, 268 N.C. 381, 387, 150 S.E.2d 759, 764 (1966) (holding in rear-end collision

case evidence insufficient to go to jury on issue of plaintiff's contributory negligence where plaintiff stopped suddenly at yellow light instead of driving through intersection, because plaintiff was "entitled to assume that the driver of the truck behind her had observed the yellow light, would see her brake light and would exercise reasonable care to bring his own vehicle to a stop").

## Defendant's Negligence

We next address whether the trial court erred in granting plaintiff's motion for a directed verdict as to defendant's negligence. Plaintiff argues that, even when viewing the evidence in a light most favorable to defendant, the evidence establishes that defendant was negligent in that she (1) failed to yield to an emergency vehicle, (2) was following defendant too closely, and/or (3) failed to keep a proper lookout. We agree.

"Fundamental to the right to operate any motor vehicle is the rule of the prudent man declared in G.S. 20-140, that he shall operate with due care and circumspection so as not to endanger others by his reckless driving." *McEwen Funeral Serv., Inc.*, 248 N.C. at 150, 102 S.E.2d at 819. "The violation of statutory rules of the road designed to provide for human safety is either negligence per se or the basis on which a jury can find negligence if the statute declares its violation shall not constitute negligence as a matter of law." *Id.*, 102 S.E.2d at 820 (internal citations omitted).

Plaintiff asserts that defendant was negligent per se because she failed to stop for a fire truck in violation of N.C. Gen. Stat. § 20-157 (2013). This statute provides:

> (a)   Upon the approach of any . . . fire department vehicle . . . giving warning signal by appropriate light and by audible bell, siren or exhaust whistle, audible under normal conditions from a distance not less than 1000 feet, the driver of every other vehicle shall immediately drive the same to a position as near as possible and parallel to the right-hand edge or curb, clear of any intersection of streets or highways, and shall stop and remain in such position unless otherwise directed by a law enforcement or traffic officer until the . . . fire department vehicle . . . shall have passed. Provided, however, this subsection shall not apply to vehicles traveling in the opposite direction of the vehicles herein enumerated when traveling on a four-lane limited access highway with a median divider dividing the highway for vehicles traveling in opposite directions, and provided further that the violation of this subsection shall be negligence per se.

*Id.* In addition, N.C. Gen. Stat. § 20-156, quoted earlier, requires that vehicles yield to emergency vehicles at intersections.

As previously noted, the duty to yield to an emergency vehicle under N.C. Gen. Stat. § 20-156 does not apply "until an appropriate warning has been directed" to the vehicle, such warning being "a sound as was in fact heard and comprehended, or should have been heard and its meaning understood, by a reasonably prudent operator called upon to yield the right of way." *McEwen Funeral Serv., Inc.*, 248 N.C. at 151, 102 S.E.2d at 820-21. We believe this reasoning applies with equal force to a driver's duty to stop for an emergency vehicle under N.C. Gen. Stat. § 20-157.

Defendant, in support of her argument that she was not negligent by failing to yield to the fire truck, points to evidence that the light was green in her favor and that she was unable to hear the siren. These facts, taken as true, do not establish that defendant was not negligent. Our Supreme Court has explained that "notwithstanding a green traffic light faced the operator of a motor vehicle, [a driver may] not go forward blindly, but [is] required to use ordinary care, to maintain a proper lookout, to keep his vehicle under reasonable control, and to drive his vehicle at a speed reasonable and prudent under existing conditions." *Williams v. Sossoman's Funeral Home, Inc.*, 248 N.C. 524, 529, 103 S.E.2d 714, 718 (1958). With respect to one's duty to yield to emergency vehicles, the Court explained that regardless whether the driver actually hears the siren, if the evidence shows "that the siren was audibly sounded and that the [driver] was within range where he could have heard the siren had he been listening, then the [driver] will be deemed to have heard that which he should have heard and that which a reasonably prudent person exercising due care would have heard." *Id.* at 530, 103 S.E.2d at 718-19.

Whether the issue reaches the jury, however, is a separate question. In *Williams*, the Supreme Court held that the trial court properly submitted to the jury the issue of whether an ambulance had a right of way when entering an intersection with a red light when there were discrepancies in the evidence with respect to the siren. *Id.* at 529, 103 S.E.2d at 718. The Court explained:

> Notwithstanding the unequivocal evidence from witnesses for defendants that they heard the siren when the ambulance began its journey and continued to hear it until the moment of the impact, the equally unequivocal testimony of the occupants of the Chevrolet and another witness just a few feet from the intersection that they did not hear the siren until the ambulance was within a few feet of the intersection is some evidence that the siren was not in fact sounded in time to provide a warning to the plaintiffs.

*Id.* at 528-29, 103 S.E.2d at 718. Therefore, "the court could not, as a matter of law, hold that [the ambulance driver] had complied with the terms of the statute and was entitled to the right of way." *Id.* at 529, 103 S.E.2d at 718.

At trial, plaintiff, Ms. Hendrix, and Mr. West testified that they were able to hear the fire truck's siren. Mr. West, who was travelling behind defendant's vehicle and had his window rolled down, was able to hear the siren from approximately a block away from the intersection. Ms. Hendrix was able to hear it from the right lane of the intersection while her windows were rolled up. Mr. Dobbins, the fire truck driver, testified that the siren was on and that it was designed to be heard from a minimum distance of 1,000 feet away. Defendant, however, testified that she never heard the siren at any time, and that she had her windows rolled up and she was listening to music at a "normal or a little softer" volume. Defendant's testimony is some evidence that defendant could not have heard the siren even had she been listening. As in *Williams*, this dispute in the evidence prevents the trial court from

holding as matter of law that defendant breached a duty in violation of N.C. Gen. Stat. §§ 20-156(b) or 20-157(a).

Nevertheless, defendant still owed " 'a minimal duty of care to keep a reasonable and proper lookout in the direction of travel and see what [she] ought to [have seen].' " *Allen v. Efird*, 123 N.C. App. 701, 703, 474 S.E.2d 141, 143 (1996) (quoting *Keith v. Polier*, 109 N.C. App. 94, 99, 425 S.E.2d 723, 726 (1993)). "The duty to maintain a proper lookout requires that the operator of a motor vehicle be reasonably vigilant, and that he or she anticipate the presence of others." *Radford v. Norris*, 74 N.C. App. 87, 89, 327 S.E.2d 620, 622 (1985). Further, "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." N.C. Gen. Stat. § 20-152(a) (2013).

" 'Ordinarily the mere fact of a collision with a vehicle ahead furnishes some evidence that the following motorist was negligent as to speed, was following too closely, or failed to keep a proper lookout.' " *Racine v. Boege*, 6 N.C. App. 341, 345, 169 S.E.2d 913, 916 (1969) (quoting *Clark v. Scheld*, 253 N.C. 732, 737, 117 S.E.2d 838, 842 (1961)). Defendant correctly points out, however, that "[t]his is . . . by no means an absolute rule to be mechanically applied in every rear-end collision case." *Id.* Nevertheless, in this case, even assuming that the light was green, that defendant did not hear the fire truck siren, and that plaintiff stopped suddenly, there is no non-

negligent explanation for why defendant was unable to stop in time to avoid rear-ending plaintiff. The only inference to be drawn from the evidence is that defendant was either following plaintiff too closely or she was not paying attention to what was in front of her.

The undisputed evidence establishes that it was a clear day and defendant was driving behind plaintiff in the same lane of travel with an unobstructed view of him. Aerial photographs of the intersection show that there is a large parking lot on the northeast corner of the Plaza and East 36th Street. In other words, there are no buildings to obstruct the view of East 36th Street when driving south down the Plaza. Mr. West testified that he was able to see the fire truck when both he and the fire truck were about a block away from the intersection. Had defendant been keeping a proper lookout, she would have been able to see the fire truck and would have been able to anticipate plaintiff's stop. Even assuming it was reasonable for her not to have seen or heard the fire truck approaching, had she kept a reasonable distance between herself and defendant, she would have been able to stop her vehicle in time to avoid a collision, as each of the other vehicles at the intersection were able to do. Because there is no evidence of any other explanation for the collision, we hold that the trial court did not err in granting plaintiff's directed verdict as to the issue of defendant's negligence. *See Griffin*, 267 N.C. at 299, 148 S.E.2d at 136 (holding defendant entitled to nonsuit because plaintiff contributorily negligent where

plaintiff rear-ended defendant after he stopped suddenly because cars in front of him did so, explaining that plaintiff was "charged with notice that the operation of each car is affected by the one in front of it" and "must maintain such distance, keep such a lookout and operate at such speed, under these conditions, that he can control his car under ordinarily foreseeable developments," and where "defendant did so and was able to stop when it became necessary[, n]o less responsibility was cast upon the plaintiff"). *See also Geschwind v. Hoffman*, 727 N.Y.S.2d 155, 156, 285 A.D.2d 448, 449 (N.Y. App. Div. 2001) (holding defendant negligent as matter of law where he failed to come forward with non-negligent explanation for rear-end collision, and proffered explanation that preceding vehicle stopped abruptly insufficient as matter of law to rebut presumption of negligence); *Abramowicz v. Roberto*, 631 N.Y.S.2d 442, 443, 220 A.D.2d 374, 376 (N.Y. App. Div. 1995) (affirming directed verdict in favor of plaintiff on issue of defendant's negligence where defendant rear-ended plaintiff who was stopped at red light).

We note that plaintiff cites *Safron v. Council*, ___ N.C. App. ___, 767 S.E.2d 149, 2014 WL 5587033, 2014 N.C. App. LEXIS 1137 (2014) (unpublished), *disc. review denied*, ___ N.C. ___, 771 S.E.2d 305 (2015). That case is unpublished and not binding on this Court. Additionally, the facts of that case are completely different from the facts of this case. The issue in *Safron* was whether the defendant violated N.C. Gen. Stat. § 20-149(a) (2013), when his vehicle struck the plaintiff as she was bicycling on

the side of the road and the defendant was attempting to overtake and pass her. ___ N.C. App. ___, 767 S.E.2d 149, 2014 WL 5587033, at *2, 2014 N.C. App. LEXIS 1137, at *4.  We do not find *Safron* instructive in deciding this case.

We hold that there is insufficient evidence that plaintiff acted negligently, and that the trial court did not err in directing the verdict in favor of plaintiff on the issue of contributory negligence.  Because the same reasoning applies to the order denying defendant's motion for a new trial and motion for entry of judgment notwithstanding the verdict, and defendant advances no new arguments with respect to that order, we also affirm both the judgment and the order.

AFFIRMED.

Judges STEPHENS and DILLON concur.

Report per Rule 30(e).